# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge John L. Kane

Civil Action No. 10-cv-00655-JLK-KMT

BRADLEY C. SMITH, derivatively on behalf of OPPENHEIMER GOLD & SPECIAL MINERALS FUND,

     Plaintiff,

v.

OPPENHEIMERFUNDS DISTRIBUTOR, INC.,
BRIAN F. WRUBLE
DAVID K. DOWNES
MATTHEW P. FINK,
PHILLIP A. GRIFFITHS,
MARY F. MILLER,
JOEL W. MOTLEY,
MARY ANN TYNAN,
JOSEPH H. WIKLER
PETER I. WOLD,
JOHN V. MURPHY, and
RUSSELL S. REYNOLDS, JR.,

     Defendants,

OPPENHEIMER GOLD & SPECIAL MINERALS FUND,

     Nominal Defendant.

---

## MOTION OF THE TRUSTEE DEFENDANTS TO DISMISS THE COMPLAINT UNDER RULES 12(b)(2), 12(b)(3) AND 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND UNDER 28 U.S.C. § 1406(a)

---

{JK00193340.1 }

2783995v.1

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ...................................................................................... 1

SUMMARY OF RELEVANT FACTS .......................................................................... 2

    The Fund ................................................................................................................. 2

    OppenheimerFunds Distributor, Inc. .................................................................. 3

    The Trustees ........................................................................................................... 4

    The Declaration of Trust ...................................................................................... 5

    The Complaint ........................................................................................................ 5

ARGUMENT ................................................................................................................... 6

    I.    THE COURT LACKS PERSONAL JURISDICTION OVER THE
             TRUSTEES ...................................................................................... 6

           A.    The Fund's Principal Place of Business Is Not Located  in
                 Colorado and in Any Event That Question Is Not Relevant ...................... 6

           B.    The Claims Asserted Against the Trustees Do  Not Arise From
                 Any Activities in Colorado ........................................................................ 10

    II.    THIS DISTRICT IS NOT A proper venue ........................................... 11

    III.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE
             TRUSTEES ................................................................................... 13

CONCLUSION .............................................................................................................. 18

## TABLE OF AUTHORITIES

### CASES

Ashcroft v. Iqbal, ,
129 S. Ct. 1937 (2009) .................................................................................. 14

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007) ............................................................................... 13, 17

Bonhan v. Jefferson Pilot Fin. Inc.,
08-cv-515, 2010 WL 1405448 (W.D.N.C. Mar. 31, 2010) ...................................... 16

Burks v. Lasker,
441 U.S. 471 (1979) ....................................................................................... 6

Cascade Fund, LLLP v. Absolute Capital Management Holdings Ltd.,
No. 08-cv-01381, 2010 WL. 1380389 (D. Colo. Mar. 31, 2010) ....................... 8, 9

Demoulas v. Demoulas Super Markets, Inc.,
424 Mass. 501 (Mass. 1996) ......................................................................... 15

Gibson v. Wiley,
08-c 2008 WL. 4092870 (D. Colo. Aug. 25, 2008) ............................................. 13

Henderson v. Axiam Inc.,
1999 WL. 33587312 (Mass. Super. Ct. June 22, 1999), aff'd,
797 N.E.2d 502 (Mass. App. Ct. 2003) .......................................................... 14

Marsman v. Nasca,
573 N.E.2d 1025 (Mass. App. Ct. 1991) ......................................................... 16

Melea, Ltd. v. Jawer SA,
511 F.3d 1060 (10th Cir. 2007) ................................................................. 6, 10

Pierce v. Shorty Small's of Branson, Inc.,
137 F.3d 1190 (10th Cir. 1998) ..................................................................... 11

Rathbone L.L.C. v. XTO Energy, Inc.,
08-cv-1370, 2010 WL 891634 (W.D. Okla. Mar. 9, 2010) .................................. 12

Rittenmeyer v. Grauer,
104 S.W.3d 725 (Tex. Ct. App. 2003) .......................................................... 7, 8

Spiegel v. Beacon Participations, Inc.,
    297 Mass. 398 (Mass. 1937) ................................................................. 15

Stjernholm v. I.R.S., 94-c 1995 WL 723268 (D. Colo. Sept. 18, 1995), aff'd,
    85 F.3d 641 (10th Cir. 1996) ................................................................. 13

Ten Mile Indus. Park v. Western Plains Serv. Corp.,
    810 F.2d 1518 (10th Cir. 1987) ............................................................... 8

Yameen v. Eaton Vance Distributors, Inc.,
    394 F. Supp. 2d 350 (D. Mass. 2005) ................................................. 4 n.1

## STATUTES & RULES

15 U.S.C. § 80a-43 ......................................................................................... 11

17 C.F.R. § 270.12B-1(a)(2) ..................................................................... 4 n.2

17 C.F.R. § 270.12b-1(b) .......................................................................... 4 n.1

28 U.S.C. § 1391(b) .................................................................................. 2, 11-12

28 U.S.C. § 1406(a) ......................................................................................... 1

Fed. R. Civ. P. 12(b)(2) ................................................................................... 1

Fed. R. Civ. P. 12(b)(3) ................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ............................................................................. 1, 13

## OTHER AUTHORITIES

U.S. Code Cong. & Admin. News 1910 ............................................................ 7

Defendants Brian F. Wruble, David K. Downes, Matthew P. Fink, Phillip A. Griffiths, Mary F. Miller, Joel W. Motley, Mary Ann Tynan, Joseph H. Wikler, Peter I. Wold and Russell S. Reynolds, Jr. (the "Trustees" or "Trustee Defendants"), by their attorneys, respectfully move the Court for an order dismissing, with prejudice, Counts III and IV of the Complaint, under Rules 12(b)(2), 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure and under 28 U.S.C. § 1406(a). The Trustees also join in and incorporate by reference all of the arguments made in the motion to dismiss filed by defendant OppenheimerFunds Distributor, Inc. ("OFDI").

## PRELIMINARY STATEMENT

This is a shareholder derivative action, purportedly brought on behalf of the Oppenheimer Gold & Special Minerals Fund (the "Fund"), that challenges the Fund's payment of certain "Rule 12b-1 Fees" in connection with the distribution of its shares. Whatever the merits of that claim -- and as is shown both below and in the motion to dismiss of OFDI, there is no merit to that claim -- this suit has no genuine connection to the State of Colorado or to this federal judicial district. The suit has been brought by a citizen of North Carolina, purportedly on behalf of a mutual fund organized under Massachusetts law, to challenge decisions made in New York, and carried out principally in New York, by Fund trustees who reside in New York and in states around New York, and whose work does not regularly bring them to Colorado. Because the Trustees have had so little contact with this State and with this judicial district, the claims against them must be dismissed for at least two reasons.

First, as shown in Point I, the Court lacks personal jurisdiction over the Trustees.  None of the Trustees resides in Colorado or regularly conducts business here, and  neither of the claims asserted against them arises from the Trustees' limited contacts with Colorado since November 2005.

Second, as shown in Point II, venue is not proper in the District of Colorado.  A substantial part of the events giving rise to the claims asserted against the Trustees occurred in New York, and thus there is no basis for venue in this District under the relevant statute, 28 U.S.C. § 1391(b).

The plaintiff's substantive claims against the Trustees have equally little place in this Court.  As against the Trustees, the plaintiff asserts only two state law claims, both of which are governed by Massachusetts law.  Thus if the claims against OFDI are dismissed, as they should be, the Court should decline to exercise supplemental jurisdiction over the remaining claims against the Trustees.  Beyond that, those two claims amount to only one -- for a breach of fiduciary duty -- and the Complaint fails to make enough detailed allegations to support a plausible inference that the Trustees acted in the grossly negligent manner that both Massachusetts law and the Declaration of Trust specify as being the minimum showing that the Plaintiff must make in order to pursue a claim.

## SUMMARY OF RELEVANT FACTS

### The Fund

The Fund is organized as a business trust under Massachusetts law.  (Declaration of Robert G. Zack ["Zack Decl."], Ex. 1 ["Compl."] ¶ 11.)  It is classified under the Investment Company Act of 1940 (the "ICA") as being an open-end investment management company.

(<u>Id.</u>)  Plaintiff is a resident of North Carolina, and purportedly owns Class C shares in the Fund, and he purports to bring this action derivatively on behalf of the Fund.  (<u>Id.</u> ¶ 10.)

The Fund does not have any employees or its own office space, either in Colorado or elsewhere.  (Zack Decl. ¶ 2.)  Rather, as is true of almost all mutual funds, the Fund is governed by its Board of Trustees, which enters into contracts with third-party vendors – such as an investment adviser, distributor, and transfer agent – to provide all the services to the Fund that it needs to conduct its business.  (<u>Id.</u>)

The Fund's principal day-to-day business activities are carried out by its investment adviser, OppenheimerFunds, Inc. ("OFI"), under a management contract that has, as required by law, been approved by the Fund's Board of Trustees and also has been approved by its shareholders, and under which OFI furnishes certain of its employees to carry out the Fund's day-to-day business activities.  (<u>Id.</u> ¶ 3.)

**OppenheimerFunds Distributor, Inc.**

OFDI is a registered broker-dealer.  (<u>Id.</u> ¶ 4.)  The Fund has designated OFDI to provide services in connection with the distribution of the Fund's shares.  (<u>Id.</u>)  In exchange for these distribution services, the Fund pays to OFDI certain fees in accordance with written plans that are approved annually by the shareholders and by the Trustees at board meetings.  (<u>Id.</u>)  These written plans are called "Rule 12b-1 Plans" and the payments that are authorized by those plans are called "Rule 12b-1 Fees."  (<u>Id.</u>)

SEC Rule 12b-1 imposes certain requirements on a fund that intends to act as a distributor of its securities and to use a percentage of fund assets to cover distribution expenses. The Rule specifies that any such payments must be "made pursuant to a written plan describing

all material aspects of the proposed financing of distribution" and further that "all agreements

with any person relating to implementation of the plan" must be in writing."[1]  Thus under a

"Rule 12b-1 Plan," mutual funds are permitted to pay "Rule 12b-1 Fees" out of fund assets to:

> directly or indirectly [] finance[] any activity which is primarily intended to result in the sale of shares issued by such company, including, but not necessarily limited to, advertising, compensation of underwriters, dealers, and sales personnel, the printing and mailing of prospectuses to other than current shareholders, and the printing and mailing of sales literature.[2]

Since 2005, which is the earliest year about which the Complaint makes allegations, the

Fund's public filings have described in detail the Rule 12b-1 Fees that the Fund pays to OFDI

under the Rule 12b-1 Plan.  (Zack Decl.. ¶ 5; Ex. 2.)  Those public filings also have indicated

that, under the Fund's Rule 12b-1 Plan, OFDI may in turn pay the Rule 12b-1 Fees that it

receives from the Fund to retail broker-dealers who distribute Fund shares.  (Id.)

**The Trustees**

None of the Trustees resides in Colorado.  (Id. ¶ 7.)  They have no registered agent in

Colorado for service of process.  (Id. ¶ 10.)  Indeed, none of them was served with the Complaint

in Colorado.  (Id.)  They were all served in New York.  (Id.)  The Fund's October 28, 2009

Statement of Additional Information ("SAI") identified the Trustees of the Fund at that time.

(Id. ¶ 6.)  It stated that the mailing address of the Fund and the Trustees is 6803 Tuscon Way,

Centennial, Colorado 80112.  (Id.)  The Colorado address is used merely for processing

correspondence because it is the address of the Fund's transfer agent.  (Id.)  It was not where any

of the Trustees resides, conducts business, or receives personal mail.  (Id.)

---

[1]    17 CFR § 270.12b-1(b); see Yameen v. Eaton Vance Distributors, Inc., 394 F. Supp. 2d 350, 354 (D. Mass. 2005).

[2]    17 C.F.R. § 270.12b-1(a)(2).

Since November 2005, the Trustees have met as a Board either in New York or telephonically, with no member participating from Colorado.  (Id. ¶ 8.)  Their only contacts with Colorado since that time have been limited to phone calls with OFI, which has an office in Colorado.  (Id.)

Also, since November 2005, OFDI reported to the Fund's Board of Trustees in New York regarding the Rule Rule 12b-1 fees that the Fund made to OFDI and that OFDI made to broker-dealers.  (Id. ¶ 9.)  Thus, since that time, the annual review and approval of the Rule 12b-1 Plan, and of the payment of Rule 12b-1 Fees was conducted by the Fund's Board of Trustees in New York.  (Id.)

**The Declaration of Trust**

The principle rules regarding the governance of the Fund are set forth in a Declaration of Trust.   Since 2005, that Declaration has contained a provision commonly known as an "exculpatory clause" that limits the instances in which a Trustee may be held personally liable for decisions that he or she makes.  More specifically, this provision states that a Trustee may be held liable only for "willful misfeasance, bad faith, gross negligence or reckless disregard of the duties involved in the conduct of his or her office."  (Zack Decl. Ex. 3).  Since November 2005, the Fund's public filings put shareholders on notice of the exculpatory clause.  (Id. Ex. 2, 2007 SAI at 54.)

**The Complaint**

In March 2010, Plaintiff filed the Complaint purportedly on behalf of the Fund  The Complaint alleges that the Fund's 12b-1 Plan is unlawful and should be voided because it permits payments of Rule 12b-1 Fees to be made to broker-dealers that have not registered as

investment advisers.  (Compl. ¶¶ 63-69.)  The Complaint asserts claims against OFDI under the

ICA and for breach of contract, and claims for "breach of fiduciary duty" and "waste" against the

Trustees.  (Id. ¶¶ 70-86.)

## ARGUMENT

### I.

### THE COURT LACKS PERSONAL JURISDICTION OVER THE TRUSTEES

Plaintiff bears the burden of proving that the Court possesses personal jurisdiction over

each defendant.  See Melea, Ltd. v. Jawer SA, 511 F.3d 1060, 1065 (10th Cir. 2007).  When, as

here, jurisdiction is contested in a pre-trial motion, the plaintiff must make a prima facie showing

of personal jurisdiction by demonstrating, through affidavits or other documents, "facts that if

true would support jurisdiction over the defendant."  Id. (citation and quotation marks omitted).

The Complaint cites no statutory basis of any kind for this Court's exercising personal

jurisdiction over the Trustees.  All it alleges is that "the Trust's principal place of business is

located in this District" and that "all of the defendants have conducted business in this District,

including business relating to the claims herein being asserted."  (Compl. ¶ 8.)  Neither of these

allegations, separately or together, provides a basis for asserting personal jurisdiction.  Neither

assertion is accurate, and the location of the Fund's principal place of business is not even

relevant.

**A.   The Fund's Principal Place of Business Is Not Located**
**      in Colorado and in Any Event That Question Is Not Relevant**

Like most mutual funds, the Fund has no employees of its own and is operated

exclusively by its investment adviser (OFI).  See Burks v. Lasker, 441 U.S. 471, 480-81 (1979)

(quoting S. Rep. No. 91-184, p. 5 (1969) ("Mutual funds, with rare exception, are not operated by their own employees. Most funds are formed, sold, and managed by external organizations, [called 'investment advisers'] that are separately owned and operated . . . . Since a typical fund is organized by its investment adviser which provides it with almost all management services . . ., a mutual fund cannot, as a practical matter, sever its relationship with the adviser.") (see also U.S. Code Cong. & Admin. News 1910, pp. 4897, 4901). While OFI has an office in Colorado, OFI directs, controls and coordinates the Fund's activities out of its New York office. Because OFI is principally located in New York, and the Fund operates through OFI, the Fund is likewise principally located there.

Even if the Fund's "principal place of business" were located within this District, that would not confer personal jurisdiction over any of the individual Trustees. Personal jurisdiction over an individual Trustee will be proper only if that individual has had enough of his own relevant contacts with this State to make it fair to force him to defend himself here.

This principle was applied in Rittenmeyer v. Grauer, 104 S.W.3d 725 (Tex. Ct. App. 2003). There, a bankruptcy plan administrator brought breach of fiduciary duty claims in Texas state court on behalf of a Delaware company (the "Debtor") against certain of its former officers and directors. Three out-of-state directors contested jurisdiction. The administrator argued that, as a matter of law, the Texas court possessed personal jurisdiction over these defendants because the Debtor was headquartered in Texas. The directors argued that the Debtor was headquartered elsewhere. The trial court held that the administrator had failed to establish that the Debtor was headquartered in Texas, and dismissed the claims for lack of personal jurisdiction. The plan administrator appealed. The appellate court affirmed the dismissal, holding that even if the

Debtor had been headquartered in Texas, there still would have been no personal jurisdiction over the out-of-state directors.  The appeals court held:  "The mere fact that a Delaware corporation had its headquarters in Texas at the time of the allegedly wrongful act is not sufficient minimum contacts to give Texas courts personal jurisdiction over a non resident director who commits a tort against the corporation."  Id. at 733.

To the same effect is Ten Mile Indus. Park v. Western Plains Serv. Corp., 810 F.2d 1518, 1527 (10th Cir. 1987).  There, Wyoming residents sued a South Dakota corporation and its directors in Wyoming district court.  Id. at 1521.  The directors were residents of South Dakota and North Dakota.  Id. at 1524.  The contract that gave rise to the plaintiffs' claims had been executed in South Dakota or North Dakota.  Id. at 1525.  The Wyoming district court dismissed the complaint against the director defendants for lack of personal jurisdiction.  Id.

On appeal, the plaintiffs contended that because the corporation had done business with Wyoming residents, the corporation's contacts with Wyoming should be imputed to its directors.  Id. at 1527.  The Court of Appeals for the Tenth Circuit rejected that argument and affirmed the dismissal, holding that the corporation's contacts could not be attributed to its directors, whose only contacts with Wyoming were in their capacity as representatives of the corporation.  Id. The Court stated that "[j]urisdiction over the representatives of a corporation may not be predicated on jurisdiction over the corporation itself, and jurisdiction over the individual officers and directors must be based on their individual contacts with the forum state."  Id.

And recently, this point was made clearly in Cascade Fund, LLLP v. Absolute Capital Management Holdings Ltd., No. 08-cv-01381, 2010 WL 1380389, at *9 (D. Colo. Mar. 31, 2010).  There, fund investors had brought a securities fraud class action against, among others,

the funds' investment advisor, a Grand Cayman Island corporation, and two of the members of the funds' board of directors.  2010 WL 1380389, at *1.  The directors were both British citizens who resided in Grand Cayman Island.  Id.  The directors moved to dismiss for lack of personal jurisdiction, and the plaintiffs argued that the directors were subject to personal jurisdiction in the United States, because they had served on the boards of funds that had actively solicited business in this country.

The court immediately rejected that argument, holding that "standing alone, an individual's mere status as a board member is not sufficient to establish jurisdiction."  Id. at *9 (citing In re AstraZeneca Sec. Litig., 559 F. Supp. 2d 453, 467 (S.D.N.Y. 2008).  The court noted that the assertion of personal jurisdiction required a review of each director's own conduct.  On that review, the Court found that the plaintiff had not pointed to any actions the directors had taken to purposefully "direct their business activities towards the United States."  Id.  Nor had the plaintiff established any connection between the directors' acts and the harm which the plaintiff claimed to suffer.  Id.  The court accordingly held that the plaintiff had failed to meet its burden to establish a prima facie case for personal jurisdiction over the directors, and it dismissed the complaint against them.  Id.

Thus the rule of these cases is that the Plaintiff may not use the Fund's contacts with the State of Colorado to create personal jurisdiction over the individual Trustees.  He must identify specific, sufficient, and relevant conduct by the Trustees themselves.  The Complaint fails to do that.

**B.      The Claims Asserted Against the Trustees Do**
         **Not Arise From Any Activities in Colorado**

To support the assertion of personal jurisdiction over the Trustees, the Complaint says

only that the Trustees "have conducted business in this District" and that this "includ[es]

business relating to the Claims herein being asserted on behalf of the Trust." (Compl. ¶ 8.) But

the Complaint identifies no such "business" that the Trustees have "conducted" here. Nor does it

explain how any such "business" is related to the "claims being asserted." The Complaint

challenges the Fund's payment of Rule 12b-1 Fees under its Rule 12b-1 Plan. The Complaint

claims that the Trustees acted improperly in approving the Plan and authorizing the payment of

those Fees. But since November 2005, the Trustees reviewed and approved both the Plan and

the Fees at Board meetings that took place either in New York or telephonically with no Trustee

participating from Colorado. (Zack Decl. ¶¶ 8-9.) In addition, since that time, the reports that

OFDI made to the Board concerning the Plan and those Fees took place in New York. (Id. ¶ 9.)

Since November 2005, the Trustees' only business activities in Colorado have been

limited to communications with OFI personnel located there. (Id. ¶ 8.) OFI is the Fund's

investment adviser, not the Fund's distributor. (Id. ¶ 3.) OFI does not receive or pay Rule 12b-1

Fees. Communications with OFI, therefore, cannot establish personal jurisdiction over any of

the Trustees, because none of the claims asserted against them arises from those

communications.

Because neither of the claims asserted against the Trustees "arises" from the Trustees'

limited contacts with Colorado between November 2005 and the present, the claims must be

dismissed for lack of personal jurisdiction over the Trustees. See, e.g., Melea, Ltd. v. Jawer, 511

F.3d 1060, 1068 (10th Cir. 2007) (affirming dismissal of fiduciary duty claim against foreign

defendant because claim did not arise from defendant's contacts with Colorado).

## II.

### THIS DISTRICT IS NOT A PROPER VENUE

The procedure for deciding a motion to dismiss for improper venue is substantially

similar to that for deciding a motion to dismiss for lack of personal jurisdiction.  In responding to

a motion to dismiss for improper venue, a plaintiff may rely upon "the well pled facts of his

complaint" but only "to the extent such facts are uncontroverted by defendant's affidavit."

Pierce v. Shorty Small's of Branson, Inc., 137 F.3d 1190, 1192 (10th Cir. 1998).

The Complaint cites two statutory bases for venue -- 15 U.S.C. § 80a-43 and 28 U.S.C. §

1391(b)(2).   Neither of these statutes makes this District a proper venue for the claims against

the Trustees.

Section 80a-43 creates venue only for claims asserted under the ICA.  Here, no such

claim is asserted against the Trustees.

Section 1391(b) ordinarily does apply to cases, such as this one, that are not founded

solely on diversity, but it too has no application here.  Venue is not proper in this District under

Section 1391(b) because the Trustees do not reside in a single state and because a "substantial

part" of the alleged events and omissions giving rise to the claims asserted against the Trustees

did not occur here.

Under 28 U.S.C. § 1391(b), an action which, like this one, is not based solely on diversity

of citizenship may:

> be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . . or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).  Plaintiff concedes that this District is not a proper venue under subsections (1) and (3).  He contends, however, that venue is proper in this District under Subsection (2) because "a substantial part of the events or omissions giving rise to the claim occurred here." That contention has no merit.

Rathbone L.L.C. v. XTO Energy, Inc., 08-cv-1370, 2010 WL 891634 (W.D. Okla. Mar. 9, 2010) is instructive here. Rathbone brought an action in Oklahoma district court against XTO and its officers and directors, based on XTO's tax payments to the state of Arkansas in connection with its drilling operations in that state.  The defendants moved to dismiss for improper venue.  In opposing the motion, Rathbone argued that venue was proper in Oklahoma because XTO's office in Oklahoma City  "(1) manages its Arkansas oil and gas properties; (2) obtained reference materials on Arkansas sales taxes and disseminated that information to XTO's other offices; (3) has discretion to pay Arkansas sales tax on all invoices of $50,000 or less; and (4) has authorized the payment of such taxes." Id. at *1.  The court rejected these arguments, and dismissed the action for lack of proper venue.  The court held that a "substantial part of the events" giving rise to the claim did not occur in Oklahoma, but occurred in XTO's office in Fort Worth, Texas, where XTO had "made the decisions on the taxability of the transactions, and . . . furnished that information to the Oklahoma City department," paid the invoices, and conducted "an after-the-fact (post-payment) review of the invoices to determine whether additional sales and use taxes need to be paid or refunds sought." Id.

This case presents an even weaker argument for venue than <u>Rathbone</u> did.  There, some relevant events took place in Oklahoma.  Here, Plaintiff cannot even say that.  The Complaint challenges the payment of Rule 12b-1 fees.  Since at least November 2005, the Fund approved those fees, pursuant to a Rule 12b-1 Plan that the Trustees approved at meetings held in New York or by telephone with no Trustee participating from Colorado.  (Zack Decl. ¶¶ 8-9.)  The claims being asserted against the Trustees arise from those approvals, all in New York, and a "substantial part" of the events giving rise to the claims occurred in New York and did not occur in Colorado.   Accordingly, the action must be dismissed against the Trustees for lack of proper venue.  <u>See also</u> <u>Gibson v. Wiley</u>, 08-cv-935, 2008 WL 4092870, at *2 (D. Colo. Aug. 25, 2008) (dismissing action for lack of proper venue where the events "primarily" occurred in Illinois); <u>Stjernholm v. I.R.S.</u>, 94-cv-2412, 1995 WL 723268, at * 3 (D. Colo. Sept. 18, 1995) (dismissing action for lack of proper venue where "virtually all of the conduct giving rise to the Plaintiffs' claims occurred in Wyoming"), <u>aff'd</u>, 85 F.3d 641 (10th Cir. 1996).

## III.

### THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE TRUSTEES

A motion to dismiss should be granted where, as here, the complaint fails to state a claim as a matter of law.  <u>See</u> Fed. R. Civ. P. 12(b)(6).  To satisfy his pleading obligations, Plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  He must support his claim through factual allegations sufficient "to raise a right to relief above the speculative level." <u>Id.</u>

In analyzing the sufficiency of a complaint, a court must identify "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).  While a court must assume the veracity of any "well-pleaded factual allegations," it must determine whether such allegations "plausibly give rise to an entitlement to relief." Id. at 1940-41.  Where factual allegations are "merely consistent with" a defendant's liability, they "stop[] short of the line between [the inadequate] possibility and [the required] plausibility of 'entitlement to relief.'" Id. at 1949.  When viewed in light of these principles, the Plaintiff's claims against the Trustees do not plausibly give rise to an entitlement to relief.

As against the Trustees, the Complaint asserts two claims -- breach of fiduciary duty and waste.  As a matter of law, the two claims are the same.  Waste is simply a kind of claim for breach of fiduciary duty.  See Henderson v. Axiam Inc., 1999 WL 33587312, at *48 (Mass. Super. Ct. June 22, 1999) (explaining that claims for theft of corporate opportunity, breach of fiduciary duty and corporate waste "fall within the rubric of breach of fiduciary duty"), aff'd, 797 N.E.2d 502 (Mass. App. Ct. 2003).  In addition, the Complaint alleges no additional acts of wrongdoing in support of the claim for waste.  (Compare Compl. ¶¶ 76-82 with ¶¶ 83-86.)

Plaintiff's breach of fiduciary duty claim against the Trustees rests on the theory that by authorizing Rule 12b-1 Plans and the payment of Rule 12b-1 Fees that supposedly violate the federal securities laws, the Trustees have breached their common law fiduciary obligations under Massachusetts law.  As demonstrated in OFDI's motion to dismiss, the Complaint fails to make out any violation of federal securities law.  For that reason alone, Plaintiff's claim against the Trustees also fails.

But even if the federal claim asserted against OFDI could somehow survive dismissal, there still would be no breach of fiduciary duty claim against the Trustees.  Under Massachusetts law, a trustee is required to act with loyalty and with due care.  Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 528 (Mass. 1996) (directors "owe the corporation both a duty of care and . . . a paramount duty of loyalty") (internal citations omitted); see also Spiegel v. Beacon Participations, Inc. 297 Mass. 398, 410-11, 416 (Mass. 1937)   Here the Plaintiff has not adequately alleged a breach of either of these duties.

The Complaint alleges in the most conclusory manner possible that the Trustees "breached their duty . . . loyalty."  (Compl. ¶ 78.)  But nowhere does the Complaint allege any self-dealing by any of the Trustees.  For this reason, Plaintiff certainly has not met the Iqbal requirements for pleading a breach of the fiduciary duty of loyalty.  Accordingly, any claim based on that allegation must be dismissed.

The Complaint likewise alleges, again in an entirely conclusory way, that the Trustees breached their duty of care and acted with "reckless disregard" of their duties.  (Id. ¶ 81.)  Any such claim in this case has to pass a high threshold, because both the exculpatory clause in the Declaration of Trust and Massachusetts law protect trustees from claims for breach of the fiduciary duty of care that are founded on anything less than gross negligence.

In Massachusetts, it has long been held that directors "cannot be held responsible for mere errors of judgment or want of prudence" and that bad faith is "not merely negligence." Spiegel v. Beacon Participations, Inc. 297 Mass. 398, 410-11, 416 (Mass. 1937).  The Fund's exculpatory clause is to the same effect, providing in pertinent part:

> All persons . . . doing business with, contracting with or having or
> asserting any claim against the Trust or the Trustees shall look

> only to the assets of the Trust for payment under any such . . .
> transaction, contract or claim; and neither the Shareholders nor the
> Trustees, nor any of their agents, whether past, present or future,
> shall be personally liable therefor; notice of such disclaimer shall
> be given in each agreement, obligation or instrument entered into
> or executed by the Trust or the Trustees.

(Zack Decl. Ex. 3, Article NINTH (2), at page 23-24.)

This provision is valid and enforceable. See Marsman v. Nasca, 573 N.E.2d 1025, 1032

(Mass. App. Ct. 1991) ("Although exculpatory clauses are not looked upon with favor and are

strictly construed, such 'provisions inserted in the trust instrument without any overreaching or

abuse by the trustee or of any fiduciary or confidential relationship to the settlor are generally

held effective except as to breaches of trust committed in bad faith or intentionally or with

reckless indifference to the interest of the beneficiary.'") (citation and internal quotation marks

omitted).

The only conduct not protected by the exculpatory clause is "willful misfeasance, bad

faith, gross negligence or reckless disregard" of the "duties involved in the conduct" of the office

of Trustee. (Zack Decl. Ex. 3, Article NINTH (2), at page 23-24.)  In no way does the

Complaint come close to making a showing of gross negligence. See Bonham v. Jefferson Pilot

Fin. Ins., 08-cv-515, 2010 WL 1405448 (W.D.N.C. Mar. 31, 2010).  In Bonham, an insurer had

denied coverage and its insured claimed that the insurer had "breached the individual and

collective duties of fiduciary responsibility" owed to him. Id. at *4.  He further alleged that the

insurer denied him benefits that were "knowingly owed" to him. Id.  The court dismissed the

claim on the pleadings because the complaint did not allege the "underlying conduct" that

resulted in the breach, and because the complaint alleged no facts to support the conclusion that the insurer acted intentionally.  Id.  The same result is required here.  Id.

The Complaint alleges that under the federal securities laws, a trustee has a duty to "approve the written compliance policies and procedures in place" at the broker-dealers "that are reasonably designed to prevent, detect and correct violations of the federal securities laws."  (Id. ¶ 46.)  Nowhere, however, does the Complaint allege that the Trustees failed to approve such compliance policies or that such policies were not reasonably designed to prevent, detect and correct violations of the federal securities laws.  Nor does the Complaint allege that a single broker-dealer recipient of Rule 12b-1 Fees in fact violated its obligations under the federal securities laws.  Instead, the Complaint asks the Court to infer that the Trustees must have failed to approve the written compliance policies of the broker-dealers or did so inadequately "to the extent" any broker-dealer violated its obligations under the federal securities laws.  (Id. ¶ 49.)  Such ipse dixit and hypothetical allegations fail to support a plausible inference that the Trustees acted even negligently, let alone with gross negligence.  See Twombly, 550 U.S. at 555  (holding that a plaintiff must support a claim through factual allegations sufficient "to raise a right to relief above the speculative level.").

## CONCLUSION

For the foregoing reasons, the Trustees respectfully request an order dismissing the action in its entirety.

Dated:      New York, New York
            June 25, 2010


                        ____s/ Edward T. Lyons, Jr._____
                        Edward T. Lyons, Jr.
                        Jones & Keller, P.C.
                        1999 Broadway, Suite 3150
                        Denver, Colorado 80202
                        (303) 573-1600

                              -and-


                        ___s/ Arthur H. Aufses III_____
                        Arthur H. Aufses III
                        Yehudis Lewis
                        Nakeeb Siddique
                        Kramer Levin Naftalis & Frankel LLP
                        1177 Avenue of the Americas
                        New York, New York 10036
                        (212) 715-9100

                        *Attorneys for Defendants Brian F. Wruble,*
                        *David K. Downes, Matthew P. Fink,*
                        *Phillip A. Griffiths, Mary F. Miller,*
                        *Joel W. Motley, Mary Ann Tynan,*
                        *Joseph H. Wikler, Peter I. Wold,*
                        *and Russell S.  Reynolds, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of June, 2010, I electronically filed a true and correct copy of the foregoing **MOTION OF THE TRUSTEE DEFENDANTS TO DISMISS THE COMPLAINT UNDER RULES 12(b)(2), 12(b)(3) AND 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND UNDER 28 U.S.C. § 1406(a)** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Arthur H. Aufses, III**
  aaufses@kramerlevin.com

- **Jeffrey A. Chase**
  jchase@jcfkk.com,vlsanders@jcfkk.com

- **William K. Dodds**
  william.dodds@dechert.com,luis.lopez@dechert.com

- **Stephanie Erin Dunn**
  sdunn@perkinscoie.com,sdunn-efile@perkinscoie.com

- **David A. Kotler**
  david.kotler@dechert.com

- **Robert Nolen Miller**
  rmiller@perkinscoie.com,rmiller-efile@perkinscoie.com

- **Andrew Wilson Myers**
  amyers@jacobschase.com,cjones@jacobschase.com

- **Janine Lee Pollack**
  jpollack@milberg.com

- **Lauren Block**
  lblock@milberg.com

- **Michael Champlin Spencer**
  mspencer@milberg.com

     I hereby certify that I have also served the foregoing on the following via regular United States mail, first class postage prepaid:

- Oppenheimer Quest for Value Funds
  6803 S. Tucson Way
  Centennial, CO 80112

*s/ Edward T. Lyons*
Edward T. Lyons, Jr.
Jones & Keller, P.C.
1999 Broadway, Suite 3150
Denver, CO 80202
Tel: (303) 573-1600
Fax: (303) 573-813
E-mail: elyons@joneskeller.com

**Attorneys for Nominal Defendant**
Oppenheimer Quest for Value Funds
