**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane**

Civil Action No. 10-cv-00655-JLK-KMT

BRADLEY C. SMITH, derivatively on behalf of OPPENHEIMER GOLD & SPECIAL
MINERALS FUND,

      Plaintiff,

v.

OPPENHEIMERFUNDS DISTRIBUTOR, INC.,
BRIAN F. WRUBLE,
DAVID K. DOWNES,
MATTHEW P. FINK,
PHILLIP A. GRIFFITHS,
MARY F. MILLER,
JOEL W. MOTLEY,
MARY ANN TYNAN,
JOSEPH M. WIKLER,
PETER I. WOLD,
JOHN V. MURPHY, and
RUSSELL S. REYNOLDS, JR.,

      Defendants,


OPPENHEIMER GOLD & SPECIAL MINERALS FUND,

      Nominal Defendant.

---

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM BY DEFENDANTS OPPENHEIMERFUNDS
DISTRIBUTOR, INC. AND JOHN V. MURPHY**

---

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

I.   PLAINTIFF'S SECTION 47(b) CLAIM FAILS AS A MATTER OF LAW .................. 4

    A.   There Is No Independent Private Right Of Action Under Section 47(b)............... 4

    B.   Plaintiff Has Not Alleged A Viable Predicate Violation Of The ICA
        Against OFDI As Required To State A Section 47(b) Claim ............................... 7

        1.   Rule 38a-1 cannot serve as a predicate for a Section 47(b) claim
            against OFDI .................................................................................... 7

        2.   Section 36(a) cannot serve as a predicate for a Section 47(b) claim
            against OFDI .................................................................................. 10

    C.   Plaintiff Cannot State A Section 47(b) Claim Where The Only Securities
        Law Violation That He Alleges Is Collateral And Tangential To The
        Contract He Seeks To Rescind ............................................................................ 11

    D.   Plaintiff Has Not Stated A Claim For A Violation Of The IAA By Any
        Non-Party Broker-Dealer .................................................................................... 12

        1.   Plaintiff has not alleged that any non-party broker-dealer provided
            him (or any Fund shareholder) with investment advice concerning
            an investment in the Fund ................................................................ 13

        2.   Plaintiff has not alleged any facts that would disqualify the non-
            party broker-dealers from the "broker-dealer exception" to the
            definition of "investment adviser" .......................................................... 15

        3.   The *Financial Planning Association* decision remains of no
            relevance to Plaintiff's Section 47(b) claim .......................................... 17

        4.   The SEC's recently-issued Release in support of proposed Rule
            12b-2 provides even more reason to reject Plaintiff's contorted
            legal theory ....................................................................................... 18

    E.   Plaintiff Cannot Obtain Restitution Of The Rule 12b-1 Fees That OFDI
        Paid To Retail Broker-Dealers ............................................................................ 19

II.  THE COURT SHOULD NOT EXERCISE JURISDICTION OVER
    PLAINTIFF'S STATE LAW CLAIMS ......................................................................... 20

CONCLUSION ............................................................................................................. 22

i

# TABLE OF AUTHORITIES

## CASES

*Alexander v. Sandoval*,
    532 U.S. 275 (2001)....................................................................................................1, 4

*Berckeley Inv. Group, Ltd. v. Colkitt*,
    455 F.3d 195 (3d Cir. 2006)...........................................................................................12

*Cortlandt v. E.F. Hutton, Inc.*,
    491 F. Supp. 1 (S.D.N.Y. 1979).....................................................................................15

*Data Probe Acquisition Corp. v. Datatab, Inc.*,
    722 F.2d 1 (2d Cir. 1983) ...............................................................................................21

*Davis v. Bailey*,
    2005 WL 3527286 (D. Colo. Dec. 22, 2005)...............................................................5, 6

*Dull v. Arch*,
    2005 WL 1799270 (N.D. Ill. July 27, 2005)....................................................................6

*Farmers & Merchants Nat'l Bank v. Bryan*,
    902 F.2d 1520 (10th Cir. 1990) .....................................................................................20

*Financial Planning Association v. SEC*,
    482 F.3d 481 (D.C. Cir. 2007).......................................................................................17

*Fogel v. Chestnutt*,
    533 F.2d 731 (2d Cir. 1975)...........................................................................................10

*Forsythe v. Sun Life Fin., Inc.*,
    417 F. Supp. 2d 100 (D. Mass. 2006) ...........................................................................10

*Gabelli Global Multimedia Trust, Inc. v. Western Inv., LLC*,
    2010 WL 1253164 (D. Md. Apr. 1, 2010) ......................................................................7

*GFL Advantage Fund, Ltd. v. Colkitt*,
    272 F.3d 189 (3d Cir. 2001)...........................................................................................12

*In re American Mut. Funds Fee Litig.*,
    2005 WL 3989803 (C.D. Cal. Dec. 16, 2005) ................................................................5

*Kahn v. Seaboard Corp.*,
    625 A.2d 269 (Del. Ch. 1993)........................................................................................20

*Kassover v. UBS AG*,
  619 F. Supp. 2d 28 (S.D.N.Y. 2008) ...................................................................13, 15

*Merrell Dow Pharm. Inc.  v. Thompson*,
  478 U.S. 804 (1986) .................................................................................................21

*Morris v. City of Hobart*,
  39 F.3d 1105 (10th Cir. 1994) .............................................................................20, 21

*Mutchka v. Harris*,
  373 F. Supp. 2d 1021 (C.D. Cal. 2005) ..................................................................5, 6

*Nicodemus v. Union Pac. Corp.*,
  318 F.3d 1231 (10th Cir. 2003) ................................................................................20

*Northstar Financial Advisors, Inc. v. Schwab Investments*,
  2010 WL 3169400 (9th Cir. Aug. 12, 2010) ...........................................................5, 6

*Olmsted v. Pruco Life Ins. Co.*,
  283 F.3d 429 (2d Cir. 2002) .......................................................................................5

*Polera v. Altorfer, Podesta, Woolard & Co.*,
  503 F. Supp. 116 (N.D. Ill. 1980) .............................................................................15

*Regional Properties, Inc. v. Financial and Real Estate Consulting Co.*,
  678 F.2d 552 (5th Cir. 1982) .....................................................................................11

*Smith v. Franklin Templeton*,
  2010 WL 2348644 (N.D. Cal. June 8, 2010) .................................................... *passim*

*Stegall v. Ladner*,
  394 F. Supp. 2d 358 (D. Mass. 2005) .........................................................................5

*Transamerica Mortgage Advisors, Inc. v. Lewis*,
  444 U.S. 11 (1979) ......................................................................................................4

*Welch v. TD Ameritrade Holding Corp.*,
  2009 WL 2356131 (S.D.N.Y. July 27, 2009) ............................................................14

## STATUTES/RULES

15 U.S.C. § 80b-2(a)(11)(c) ............................................................................................13, 15

Fed. R. Civ. P. 23.1(b)(1) ..................................................................................................11

## OTHER AUTHORITIES

17 C.F.R. § 270.38a-1 ....................................................................................................7, 8

17 C.F.R. § 275.202(a)(11)-1 ............................................................................................17

SEC RELEASE NOS. 33-9128; 34-62544; IC-29367; FILE NO. S7-15-10 (JULY 21, 2010),
        *available at* HTTP://WWW.SEC.GOV/RULES/PROPOSED/2010/33-9128.PDF ...................14, 18, 19

SEC RELEASE NO. IA-1092, § II.A.2. (OCT. 8, 1987), *available at*
        HTTP://WWW.SEC.GOV/RULES/INTERP/1987/IA-1092.PDF.........................................17

SEC Release No. 26299 (Feb. 5, 2004), *available at*
        HTTP://WWW.SEC.GOV/RULES/FINAL/IA-2204.HTM ...................................................8

## PRELIMINARY STATEMENT

OFDI's opening brief on this motion ("OFDI Br.") demonstrates why Plaintiff's Investment Company Act ("ICA") Section 47(b) claim (his sole federal claim) is fatally deficient as a matter of law.  Plaintiff's opposition brief ("Opp.") fails to rebut any of OFDI's arguments. Rather, Plaintiff uses his opposition brief as a platform from which to continue to preach his novel theory that the ICA allows a derivative plaintiff acting on behalf of a mutual fund to state a claim against a mutual fund's distributor for independent broker-dealers' alleged failure to comply with *their* purported registration requirement under the Investment Advisers Act ("IAA").  Although Plaintiff's theory is as illogical as it is legally defective, this Court need not even address it in order to dismiss Plaintiff's Section 47(b) claim as a matter of law.  Indeed, Plaintiff's Section 47(b) claim continues to suffer from at least four fundamental legal flaws, any one of which independently dooms his claim.

First, as a matter of law, Plaintiff has not pled a viable Section 47(b) claim.  Plaintiff does not dispute (because he cannot) that Section 47(b) does not create its own cause of action, but rather requires Plaintiff to allege an underlying violation of the ICA or a rule, regulation, or order promulgated thereunder that itself provides a private right of action.  Indeed, as another district court recently confirmed in dismissing the identical Section 47(b) claim brought by the same Plaintiff and Plaintiff's counsel, following the U.S. Supreme Court's decision in *Alexander v. Sandoval*, 532 U.S. 275 (2001) -- a precedent that Plaintiff regrettably fails to cite --  Section 47(b) contract rescission is not available absent a predicate violation of the ICA or applicable

rule/regulation/order that itself contains a private right of action.[1]  Plaintiff cites no post-*Sandoval* decision holding otherwise, because there is none.  Plaintiff likewise does not dispute that neither of the two underlying violations alleged to support his Section 47(b) claim, ICA Section 36(a) and SEC Rule 38a-1, provides for a private right of action.  Accordingly, as a matter of law, the Court need go no further to dismiss Plaintiff's sole federal cause of action.

Second, even if Section 36(a) and Rule 38a-1 did provide for a private right of action, neither imposes on OFDI any obligation to "police" the conduct of the non-party broker-dealers that distribute Fund shares.  Indeed, neither Section 36(a) nor Rule 38a-1 (nor any other securities law) imposes on OFDI (or any other defendant) the strict liability for putative regulatory violations by any of the more than 1,800 broker-dealers that distribute Fund shares that Plaintiff here urges, including for those broker-dealers' purported failure to meet any applicable registration requirement of the IAA.  No statute, rule, or judicial decision places such an untenable obligation on OFDI, and Plaintiff has made not the slightest showing otherwise.

Third, Plaintiff does not dispute that Section 47(b) contract rescission is available only where the making of the contract to be rescinded or its performance involved the unlawful actions about which a plaintiff complains.  However, neither the Fund's Rule 12b-1 Plan nor the distribution agreement between the Fund and OFDI violated the ICA (or any other federal securities law) or required, mandated, or led to any violation of law -- including non-party broker-dealers' alleged non-compliance with their purported registration obligations.  Plaintiff does not contend otherwise and, in fact, Plaintiff does not aver that his or any other of the more

---

[1]     *Smith v. Franklin/Templeton Distributors, Inc.* ("*Franklin Templeton*")*,* 2010 WL 2348644, at *7 (N.D. Cal. June 8, 2010)*.*

than 1,800 broker-dealers distributing Fund shares actually did fail to register.  And, even if some unspecified broker-dealers (none of which is party to either of those contracts or to this action) did purportedly violate some provision of the IAA, that would not and could not have been the result of either the Rule 12b-1 Plan or the distribution agreement.

Fourth, all of the relief that Plaintiff seeks in this case is premised on his supposition that non-party broker-dealers purportedly violated the IAA by failing to register as investement advisers upon receipt of Rule 12b-1 Fees.  That pioneering theory springs from Plaintiff's fallacious conclusion that the Rule 12b-1 Fees that a mutual fund pays to a distributor (pursuant to a duly-enacted Rule 12b-1 Plan), and that the distributor pays to independent broker-dealers that sell fund shares to their clients (pursuant to a distribution agreement), are *per se* payments for investement advice and, thus, automatically render the broker-dealers "investment advisers" subject to IAA regulation.  All of Plaintiff's rhetoric aside, Congress, the SEC, and the courts have not adopted Plaintiff's novel view of the law.  To the contrary, the SEC's  recent 278-page Release announcing a proposed Rule 12b-2 to replace Rule 12b-1 reveals that the SEC has no intention of adopting any part of Plaintiff's theory.  Indeed, the Release implicitly rejects Plaintiff's theory of widespread violations of the IAA registration requirement by broker-dealers that receive Rule 12b-1 Fees.

For any of these several reasons or the others set forth herein, Plaintiff's federal claim should be dismissed.  And, because his state common law claims are ones traditionally subject to litigation in state courts, the Court should not exercise jurisdiction over them and instead should dismiss this case in its entirety.

## I.   PLAINTIFF'S SECTION 47(b) CLAIM FAILS AS A MATTER OF LAW

### A.   There Is No Independent Private Right Of Action Under Section 47(b)

As the court in *Franklin Templeton* correctly held with respect to the very same Section 47(b) claim that Plaintiff asserts here, there is "no language in ICA § 47(b) sufficient to create a private right of action under that statute . . . .  By its terms, § 47(b) provides a remedy for a violation of [the ICA] . . . rather than a distinct cause of action or basis for liability."  2010 WL 2348644, at *7.  Plaintiff nonetheless asks this Court to reject that well-reasoned holding for three reasons, none of which passes muster.

First, Plaintiff incorrectly claims that *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 18 (1979), is "controlling Supreme Court" authority "directly on point" for the proposition that Section 47(b) affirmatively provides him with a private right of action.  Opp. at 27.  *Transamerica*, however, found only that a different provision of a different statute, Section 215 of the *IAA*, "***implies*** a right to specific and limited relief"; the decision makes no mention of Section 47(b) of the ICA.  444 U.S. at 18 (emphasis added).  Moreover, *Transamerica* was decided more than 20 years before the Supreme Court's seminal decision in *Alexander v. Sandoval*, 532 U.S. 275 (2001).  *Sandoval* unequivocally restricts a court's ability to imply private rights of action, including under the federal securities laws.  *See id.* at 287 ("Having sworn off the habit of venturing beyond Congress's intent, we will not accept respondents' invitation to have one last drink.").

Indeed, as the *Sandoval* court expressly recognized, "[w]ithout [congressional intent], a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."  *Id.* at 286-87.  Consequently, "[n]o

federal court since *Sandoval* . . . has found an implied private right of action under the ICA." *In re American Mut. Funds Fee Litig.*, 2005 WL 3989803, at \*3 (C.D. Cal. Dec. 16, 2005) (denying private right of action under the ICA where "plaintiffs cite a number of cases that found private rights of action under [the ICA], but all were decided before the development in the jurisprudence reflected in *Sandoval* and its progeny"); *see Northstar Financial Advisors, Inc. v. Schwab Investments*, 2010 WL 3169400, at \*15 (9th Cir. Aug. 12, 2010) (overturning district court finding of implied right of action under Section 13 of the ICA and stating "we follow the conclusion reached by the Second Circuit in *Olmsted* and *Bellikoff*, and supported by the weight of contemporary authority, that there is no private right of enforcement").[2]

Tellingly, Plaintiff does not even acknowledge *Sandoval* or any of the foregoing on-point post-*Sandoval* authority in his opposition brief, and he certainly does not mention that in the nine years since the Supreme Court issued its *Sandoval* decision, <u>every</u> court to consider the issue has found that Section 47(b) does <u>not</u> give rise to an independent private right of action. *See Mutchka v. Harris*, 373 F. Supp. 2d 1021, 1026 (C.D. Cal. 2005) (dismissing Section 47(b) claim and stating "cases decided after *Sandoval* have refused to find an implied right of action in the ICA"); cases cited in OFDI Br. at 20.[3]

---

[2]     To the extent that Plaintiff relies on a string of outdated cases finding private rights of action under the Exchange Act and the IAA (Opp. at 27-28 n.45), those decisions are all based on *implied* rights of action, which have subsequently been rejected as part of an "*ancien regime*." *Olmsted v. Pruco Life Ins. Co.,* 283 F.3d 429, 434 (2d Cir. 2002). As courts since then have noted, the decisions Plaintiff relies upon "do not stand on as firm an analytical footing as do the cases that have taken up the question of an implied right of action . . . in the years since *Sandoval*." *Stegall v. Ladner*, 394 F. Supp. 2d 358, 368 (D. Mass. 2005).

[3]     Plaintiff's attempt to distinguish this long line of post-*Sandoval* cases is, at best, ill-conceived. The dismissals in those cases were not based on lack of standing as Plaintiff asserts. Opp. at 30. *See*, *e.g.*, *Davis v. Bailey*, 2005 WL 3527286, at \*7 (D. Colo. Dec. 22, 2005) ("[s]ince I have dismissed all the claims [including § 47(b)] in this lawsuit on the grounds stated, I need not

Next, Plaintiff asserts that the "plain language of Section 47(b)" grants him a private right of action.  But, his purported support for this assertion is statutory language not found in Section 47(b) or anywhere else in the ICA.  Rather, Plaintiff argues that because the Exchange Act has a special statute of limitations for predicate violations that do not have a private right of action, the "plain language of Section 47(b)" must have the meaning Plaintiff ascribes.  Opp. at 28.  However, the ICA does not provide any cognate special limitations, and Plaintiff fails to explain the basis for his assertion that, contrary to the holding in *Sandoval*, this inapplicable Exchange Act language somehow creates a private right of action under ICA Section 47(b).

Plaintiff lastly argues that Section 47(b) must provide for a private right of action because if it did not, then Congress would have "promulgate[d] a statutory nullity" when it enacted the ICA in 1940 since the ICA "did not include any private rights of action."  Opp. at 28.  Plaintiff is again incorrect.  The ICA *did* provide a private right of action when it was enacted in 1940. *Northstar*, 2010 WL 3169400, at *3 ("Only one section [30(f)] of the ICA as originally enacted authorized anyone other than the SEC to sue for violations of the Act.").  Moreover, if Congress wanted Section 47(b) to provide for a private right of action (as opposed to the numerous provisions in which it has vested the SEC with exclusive jurisdiction to enforce, e.g., Section 36(a)), it easily could have amended the ICA to so provide, such as it did when it created Section

---

address the Defendants' [standing] argument . . . ."); *Mutchka*, 373 F. Supp. 2d at 1027 (standing argument not considered until after court dismissed § 47(b) claim).  Moreover, none of the plaintiffs in those cases told the courts anything that "essentially amounted to voluntary dismissals."  Opp. at 30.  To the contrary, the Section 47(b) claims were dismissed only after a reasoned analysis of the alleged predicate violations in light of *Sandoval*. *See, e.g.*, *Davis*, 2005 WL 3527286, at *6 ("I find, that the equitable remedy set forth in § 47(b)(1) is only available upon a showing of other violations of the ICA."); *Dull v. Arch*, 2005 WL 1799270, at *3 (N.D. Ill. July 27, 2005) (Section 47(b) "does not provide for an independent cause of action where no violation of the ICA has occurred.").

36(b).  *See Gabelli Global Multimedia Trust, Inc. v. Western Inv., LLC*, 2010 WL 1253164, at *3

(D. Md. Apr. 1, 2010) (noting that Congress amended the ICA in 1970 "creat[ing] Section 36(b),

which expressly authorizes a security holder to bring a private right of action . . . .").  And in any

event, every other court to consider this very issue since *Sandoval* either expressly or implicitly

has rejected Plaintiff's argument.

### B.   Plaintiff Has Not Alleged A Viable Predicate Violation Of The ICA Against OFDI As Required To State A Section 47(b) Claim

#### 1.   Rule 38a-1 cannot serve as a predicate for a Section 47(b) claim against OFDI

Plaintiff asserts in his brief (but does not allege in his Complaint) that OFDI violated

Rule 38a-1 by "fail[ing] to check whether broker-dealers receiving asset-based compensation are

registered under the Advisers Act."  Opp. at 25.  Putting aside Plaintiff's backhanded attempt to

amend his Complaint, Plaintiff continues to ignore three critical legal points that wholly

eviscerate his attempted reliance on Rule 38a-1 as a predicate for his Section 47(b) claim.

First, as Plaintiff implicitly concedes, there is no private right of action under Rule 38a-1.

Thus, it is a legally insufficient predicate on which to plead a Section 47(b) claim.  *See Franklin

Templeton*, 2010 WL 2348644, at *7 ("Nor does SEC Rule 38a-1 itself create a private right of

action under ICA § 47(b)."); OFDI Br. at 20 (collecting additional cases to this same effect).

Plaintiff has declined to address this key flaw altogether.

Second, Rule 38a-1 applies only to "registered investment compan[ies]."  17 C.F.R. §

270.38a-1.  Because OFDI is not a "registered investment company," OFDI cannot violate Rule

38a-1, meaning that Plaintiff's assertion that "OppenheimerFunds Distributor has a defective

compliance program" (Opp. at 25), even if somehow true (which it is not), is of no consequence

in this litigation.  *See Franklin Templeton*, 2010 WL 2348644, at *7 (dismissing Section 47(b)

claim premised on alleged Rule 38a-1 violation because "plaintiff has pled no facts identifying

any defect in the Rule 38a-1-related compliance policies and procedures of . . . the *registered*

*investment company* in this case" (emphasis added)).  Plaintiff again wholly ignores this critical

point in his brief.

Third, even assuming Rule 38a-1 does apply to OFDI -- which it clearly does not --

Plaintiff's allegation that OFDI failed to ensure that broker-dealers registered under the IAA

(Compl. ¶ 50) is legally insufficient to support a Rule 38a-1 claim.  Under Rule 38a-1, the Fund

(not OFDI) must only adopt and implement compliance policies and procedures that are

"reasonably designed to prevent violation of the Federal Securities Laws by the fund."  17 C.F.R.

§ 270.38a-1.  The Fund's compliance program need only address potential infractions of the

federal securities laws by the Fund itself, and its "service providers."  *Id.*  Despite Plaintiff's best

efforts to ignore this issue as well, the SEC specifically defined "service provider" for purposes

of Rule 38a-1 to include "only a fund's advisers, principal underwriters, administrators, and

transfer agents."  SEC Release No. 26299, n.28 (Feb. 5, 2004), *available at*

HTTP://WWW.SEC.GOV/RULES/FINAL/IA-2204.HTM.  The broker-dealers that allegedly failed to

register under the IAA are <u>not</u> "service providers" under Rule 38a-1.  Consequently, broker-

dealers' alleged non-compliance with the federal securities laws does not fall within the ambit of

Rule 38a-1.  *See Franklin Templeton*, 2010 WL 2348644, at *8 ("Rule 38a-1 does not impose on

funds a duty to assure that the broker-dealers comply with registration requirements.").[4]  Here

---

[4]    Plaintiff cannot avoid this result by conclusorily asserting, without any support and without even
       acknowledging the directly contrary language of the ICA, the Exchange Act, and the agreements

again, Plaintiff's brief does not attempt to respond to this glaring deficiency in his effort to premise his Section 47(b) claim on Rule 38a-1.

Notwithstanding each of these fatal threshold flaws, Plaintiff's bid to use Rule 38a-1 to impose strict liability on any fund distributor that does not ensure that independent broker-dealers are registered under the IAA (Opp. at 25) is itself bereft of any support or logic. In Plaintiff's view, Rule 38a-1 requires OFDI to "police" (Compl. ¶ 50) the IAA registration of all 1,800+ of the independent broker-dealers that distribute Fund shares. As if that were not enough, as Plaintiff properly acknowledges in his brief, the IAA registration requirement is not measured on a broker-dealer by broker-dealer basis, but rather is examined on the basis of each individual relationship between a client and his or her personal broker-dealer. Opp. at 8. So, in other words, Plaintiff is arguing for a construction of Rule 38a-1 (which Plaintiff cannot enforce) in which OFDI (which is not subject to Rule 38a-1 in the first place) would be responsible for "policing" the registration obligations of each of the 1,800+ broker dealers that distribute Fund shares (who are not "service providers" under Rule 38a-1) vis-à-vis each of their undoubtedly thousands of customer accounts. Plaintiff cites nothing in support of this unfathomable theory and neither Congress, the SEC, nor the courts has ever even hinted that Rule 38a-1 imposes the illogical and untenable burden on OFDI that Plaintiff would have this Court be the first to impose.

---

between OFDI and the independent broker-dealers, that the non-party broker-dealers are agents of OFDI. *See* OFDI Br. at 14 n.30.

### 2. Section 36(a) cannot serve as a predicate for a Section 47(b) claim against OFDI

Plaintiff concedes, as he must, that he cannot bring a Section 36(a) claim against OFDI because that section does not provide a private right of action. Opp. at 24. Yet, Plaintiff illogically maintains that that fact is "irrelevant" to a determination of whether Section 36(a) may serve as a predicate to his Section 47(b) claim. *Id.* However, the numerous courts that have considered the issue unanimously have concluded otherwise, finding Section 36(a)'s absence of a private right of action not only relevant but fully dispositive. *See*, *e.g.*, *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 107 (D. Mass. 2006) (dismissing Section 36(a) claim asserted against mutual fund distributor for allegedly making improper Rule 12b-1 payments because "Section 36(a) in particular not only lacks 'rights-creating language' but also specifically authorizes only the SEC -- not private litigants -- to take enforcement action"). Consequently, courts consistently dismiss Section 47(b) claims premised on alleged violations of Section 36(a). *See, e.g., Franklin Templeton*, 2010 WL 2348644, at *7; OFDI Br. at 19-20 (collecting additional cases to this same effect). This Court should do likewise.[5]

---

[5]     Even if a cause of action under Section 36(a) against OFDI were theoretically available, Plaintiff has not established -- and cannot establish -- that OFDI violated any fiduciary duty to Fund shareholders based on the non-party broker-dealers' purported failure to register under the IAA. Plaintiff's reliance on *Fogel v. Chestnutt*, 533 F.2d 731, 745 (2d Cir. 1975), is misplaced. *Fogel* states only that "the Act implicitly established a federal standard of fiduciary duty in respect of dealings *between a mutual fund and its adviser*." *Id.* (emphasis added). Plaintiff here does not allege that the Fund's investment adviser, which is not a party to this litigation, breached any fiduciary duty. And, in any event, Plaintiff does not cite to any case in which the SEC or a court has concluded that Section 36(a) imposes a fiduciary liability on a mutual fund distributor for a broker-dealer's alleged failure to register under the IAA.

**C.      Plaintiff Cannot State A Section 47(b) Claim Where The Only Securities Law Violation That He Alleges Is Collateral And Tangential To The Contract He Seeks To Rescind**

In their opening brief, Defendants explain that Plaintiff's Section 47(b) claim could not stand because the purported securities law violation at issue here -- OFDI's payment of Rule 12b-1 Fees to broker-dealers that allegedly were "unregistered investment advisers" (Opp. at 4) -- is "collateral and tangential" to the *distribution agreement* he seeks to rescind.  OFDI Br. at 25-27.  Plaintiff's Section 47(b) claim therefore lacks the necessary nexus between the *securities law violation* alleged and the *contract* he seeks to rescind, and accordingly must be dismissed. Plaintiff does not respond to this argument, which is yet another ground to dismiss his Section 47(b) claim.

Instead, Plaintiff asserts that "the [Rule 12b-1 Fee] *payments* [to broker-dealers] are certainly not collateral to the distribution agreement."  Opp. at 31.  This argument misses the point.  The legal issue is whether the alleged securities law violations were collateral to the distribution agreement, not whether the Rule 12b-1 payments were collateral to the distribution agreement.[6]

Plaintiff's reliance on *Regional Properties, Inc. v. Financial and Real Estate Consulting Co.*, 678 F.2d 552, 560 (5th Cir. 1982), is unavailing.  The "violation alleged in *Regional*

---

[6]      Moreover, as Defendants stated in their Opening Brief, the Complaint provides no facts regarding the contracts Plaintiff seeks to rescind, much less actually recites the provisions he says violate the law.  The Opposition similarly eschews any such details.  Absent such specification, Plaintiff has not satisfied even the most minimal burden under Rule 8(a) and, indeed, has yet to plead facts establishing that he has standing to challenge the contract(s) in question.  An investor in one mutual fund lacks standing to assert claims with respect to a fund he does not own.  *See* Fed. R. Civ. P. 23.1(b)(1) (to assert a shareholder derivative action, a plaintiff must allege in his complaint that he "was a shareholder or member at the time of the transaction complained of . . . .").

*Properties* was 'inseparable from the performance of the contract' that plaintiffs were attempting to void." *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 201 (3d Cir. 2001).  Conversely, here Plaintiff is not seeking to void his contract with his broker-dealer (which allegedly violated the securities laws), but rather is invoking Section 47(b) in an attempt to rescind the Fund's Rule 12b-1 Plan and/or the distribution agreement between the Fund and OFDI.  However, Plaintiff does not and cannot allege that execution or performance of the Rule 12b-1 Plan or the distribution agreement violated any federal securities law.  Nothing about the Rule 12b-1 Plan or the distribution agreements depends on whether broker-dealers comply with any applicable registration requirements -- even under Plaintiff's as yet unprecedented view of those requirements, nothing about the contracts suggests or depends upon a broker-dealer's departure from its registration responsibilities.  *See Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 205, 207 (3d Cir. 2006) (distinguishing *Regional Properties* and dismissing rescission claim where "[a]t the time the parties entered into the Agreement, the Agreement could be performed without violating provisions of the securities laws"); OFDI Br. at 25 (collecting additional cases to the same effect).[7]

### D.    Plaintiff Has Not Stated A Claim For A Violation Of The IAA By Any Non-Party Broker-Dealer

For any of the reasons set forth in Points I.A, I.B, or I.C, the Court can and should dismiss Plaintiff's Section 47(b) claim without even considering the legally irrelevant

---

[7]    Plaintiff's hypothetical that "if the Trust were to unilaterally stop making payments, the broker-dealers could sue OppenheimerFunds Distributor, and OppenheimerFunds Distributor in turn could sue the Trust for breach of the distribution agreement" (Opp. at 31) only reinforces the collateral nature of his contract rescission claim to the distribution agreement.  The fact that in Plaintiff's hypothetical a broker-dealer only could sue OFDI, and not the Fund, shows how remote his contract rescission claim is from the alleged securities law violation.

contentions featured in Plaintiff's brief, e.g., are Rule 12b-1 Fees being used to pay for investment advice. *See* Opp. at 1-14. However, even if, contrary to all of the settled law set forth above and in Defendants' initial brief, Plaintiff could state a claim against OFDI under Section 47(b), Plaintiff's claim still would be ripe for dismissal because he has not adequately pled that the retail broker-dealers that received Rule 12b-1 Fees from OFDI were required to register as "investment advisers" under the IAA.[8]

### 1.   Plaintiff has not alleged that any non-party broker-dealer provided him (or any Fund shareholder) with investment advice concerning an investment in the Fund

Plaintiff does not dispute that the IAA regulates only "investment advisers," i.e., "those who are paid for advising others about securities."[9]   *Kassover v. UBS AG*, 619 F. Supp. 2d 28, 33 (S.D.N.Y. 2008); *see* 15 U.S.C. § 80b-2(a)(11)(c). Thus, a plaintiff cannot state a claim under

---

[8]   Plaintiff's brief is rife with erroneous statements about the scope of the "broker-dealer" exception that, for the legal reasons explained above, are completely irrelevant for purposes of deciding and granting this motion. In the interest of judicial economy, we will not correct all of Plaintiff's misstatements in this brief, but will instead briefly respond to only the most glaring examples.

[9]   Plaintiff asserts on the first page of his brief that "Defendants acknowledge that if a broker-dealer firm makes arrangements with its customer to receive compensation in the form of an ongoing fee at the rate of 1% per year of the value of the mutual fund assets held in the customer's brokerage account, deducted by the broker-dealer, that would be a violation of the [IAA] and the compensation payments would be unlawful." Opp. at 1. The Court will not find such a statement in Defendants' brief. Instead, Defendants' brief correctly argued that "[t]he *Franklin Templeton* court . . . f[ound] that the '*Financial Planning* case, on which plaintiff relies, is irrelevant to the payment of the distribution fees (known as '12b-1 fees') that plaintiff challenges. . . . The fees that were being paid to the broker-dealers in the *Financial Planning* case were for services to customers including fees for investment advice. By contrast, in the present case, the fees paid under SEC Rule 12b-1 are fees paid by the fund . . . in connection with the distribution of fund shares.'" OFDI Br. at 30-31. As should be self-evident, Defendants' point is that the fees paid by the client to its broker-dealer in *Financial Planning* were for investment advice, while the fees paid by the Franklin Templeton mutual fund to its general distributor and then to broker-dealers were payment for distribution of fund shares. The distinction properly drawn in Defendants' brief is with respect to the *purpose* of the payment (investment advice vs. distribution of fund shares); not, as Plaintiff incorrectly claims, the account from which those payments are deducted.

the IAA without pleading that he received investment advice.  In *Welch v. TD Ameritrade Holding Corp.*, 2009 WL 2356131 (S.D.N.Y. July 27, 2009) (cited in Defendants' initial brief and ignored by Plaintiff), for example, the court determined that the plaintiffs' IAA claim against defendant broker-dealers was "deficient" because plaintiffs did "not allege that they received investment advisory services from Defendants . . . ."  *Id.* at *28

Yet, nowhere in the Complaint does Plaintiff allege that he (or any other Fund shareholder) received investment advice from any broker-dealer with respect to any investment in the Fund.  Plaintiff vainly attempts to remedy this fatal defect by arguing that he does not need to plead any such facts on the ground that "*all* broker-dealers are 'investment advisers' because investment advice is an auxiliary component of traditional brokerage services."  Opp. at 18 (emphasis added).  But that sweeping legal conclusion, as acknowledged in the SEC Release on which Plaintiff relies in his Opposition (*see* Opp. at 13-14 and *infra* at footnote 10), is neither accurate nor does it cure Plaintiff's failure to meet his threshold obligation to plead that a broker-dealer provided investment advice regarding Fund investments.  Indeed, were there any merit to Plaintiff's contention, the *Welch* court would not have required the plaintiff there to plead that a broker-dealer provided investment advice; it would have concluded as much merely because the defendant was a broker-dealer.[10]

_____

[10]    The recent SEC Release announcing the proposed implementation of Rule 12b-2 as a replacement for Rule 12b-1 confirms the fallacy of Plaintiff's conclusion that all broker-dealers provide investment advice.  As the SEC notes in the Release, "[i]n some cases, investors use an intermediary (and pay sales charges) not necessarily for the services they obtain from the intermediary, but simply to be able to invest in shares of a particular fund that they cannot buy directly (*i.e*, that are sold only through intermediaries)."  Release at 7. (SEC Release Nos. 33-9128; 34-62544; IC-29367; File No. S7-15-10 (July 21, 2010), *available at* HTTP://WWW.SEC.GOV/RULES/PROPOSED/2010/33-9128.PDF)  Certainly, in those examples cited by the SEC, even Plaintiff cannot argue that the broker-dealers provide "investment advice."

While Plaintiff argues that consideration of whether any broker-dealers that received Rule 12b-1 Fees provided investment advice to Fund shareholders would constitute "resolution of . . . factual issues [that] would be improper on a motion to dismiss" (Opp. at 2), his Complaint does not raise any such issue of fact because he has failed to plead *anything* with respect to his (or any other Fund shareholder's) receipt of investment advice from any broker-dealer concerning any investment in the Fund.

> ### 2. Plaintiff has not alleged any facts that would disqualify the non-party broker-dealers from the "broker-dealer exception" to the definition of "investment adviser"

Plaintiff properly concedes that a broker-dealer is excluded from the definition of "investment adviser" if his "performance of [investment advice] is solely incidental to the conduct of his business as a broker or dealer and receives no special compensation therefore . . . ."  Opp. at 20; 15 U.S.C. § 80b-2(a)(11)(c).  But, rather than addressing the relevant questions outlined in the statute, Plaintiff attempts to sidestep his failure to plead that any broker-dealer provided "investment advice" with respect to any investment in the Fund and that it received "special compensation" *for* that advice.[11]

---

[11]    Plaintiff's contention that he has no obligation to plead that the relevant broker-dealers would not qualify under the broker-dealer exception of the IAA (*see* Opp. 20 n.35) is manifestly incorrect. It is squarely Plaintiff's burden to plead that a broker-dealer does not qualify under the broker-dealer exception.  *See, e.g., Kassover*, 619 F. Supp. 2d at 33 ("Plaintiffs fail to adequately plead that UBS FS does not fall within the broker-dealer exemption."); *Polera v. Altorfer, Podesta, Wollard & Co.,* 503 F. Supp. 116, 119 (N.D. Ill. 1980) ("To state a claim under the Advisers Act, a plaintiff first must overcome the threshold limitation imposed by the statutory definition of 'investment adviser.'  In most instances, this can be accomplished through an allegation that special compensation was paid to the defendants for services rendered which were not solely incidental to their brokerage business.  The absence of such an allegation in the present cause, however, is alone sufficient to justify dismissal of Count II."); *Cortlandt v. E.F. Hutton, Inc.*, 491 F. Supp. 1, 5 (S.D.N.Y. 1979) (dismissing case because "Plaintiff did not even allege that [defendants] went beyond acting as brokers to engage in any investment advisory activities that were not 'solely incidental' to their brokerage business.").

As Defendants explain in their opening brief, to meet the requirement that a non-party broker dealer provided investment advice that was anything other than "solely incidental" to its business, Plaintiff must allege facts demonstrating that any advice that broker-dealers purportedly provided to Fund shareholders was more than "attendant to" the other services that the broker-dealers provided.  Plaintiff does not dispute this standard, and he does not dispute that he has failed to allege any facts that would satisfy it.

Plaintiff also has not alleged that any retail broker-dealer received "special compensation" for rendering investment advice.  Rather, he self-servingly and incorrectly posits that the "special compensation" provision of the broker-dealer exception concerns not the purpose of the payment, i.e., for investment advice, but the form of compensation paid to the broker-dealer, i.e., Rule 12b-1 Fees.  As purported evidence for his assertion that all Rule 12b-1 Fees are "special compensation," Plaintiff relies on one sentence from a one paragraph statement by one of the individual defendants (Murphy) and two sentences taken from Congressional testimony and an SEC comment letter authored by partners of OFDI's counsel who are leaders in the mutual fund field.  However, none of those selectively-quoted statements actually stands for Plaintiff's proposition that the Rule 12b-1 Fees at issue here are nothing more than payments for investment advice, and Plaintiff certainly cites to nothing from the SEC or the courts to suggest otherwise.[12]

---

[12]   Plaintiff also ignores the plain language of the document on which he is suing; as Defendants explained in their opening brief, the clear language of the Fund's Rule 12b-1 Plan demonstrates that the Fund's Rule 12b-1 Fees pay for distribution-related services, not investment advice.  *See* OFDI Br. at 12-13.

Moreover, in direct opposition to Plaintiff's theory, the SEC has recognized that "special compensation" exists "only where there is a clearly definable charge for investment advice." SEC Release No. IA-1092¸ § II.A.2 (Oct. 8, 1987), *available at* HTTP://WWW.SEC.GOV/RULES/INTERP/1987/IA-1092.PDF.  Notwithstanding Plaintiff's unsupported suggestions to the contrary, the form that the consideration takes is of no import to the analysis. Because Plaintiff here has failed to allege any facts that would demonstrate that the Rule 12b-1 Fees that OFDI paid to any broker-dealer constituted a "clearly definable charge for investment advice," Plaintiff has failed to meet his burden of alleging that the non-party broker-dealers that received the Rule 12b-1 Fees do not qualify for the broker-dealer exception to the IAA.

### 3.   The *Financial Planning Association* decision remains of no relevance to Plaintiff's Section 47(b) claim

As he does in his complaint, Plaintiff's brief invokes SEC Rule 202(a)(11)-1, 17 C.F.R. § 275.202(a)(11)-1, and the D.C. Circuit's *Financial Planning Association v. SEC* opinion invalidating that rule, 482 F.3d 481, 488 (D.C. Cir. 2007), to support his novel proposition that, since 2007, every payment of Rule 12b-1 Fees pursuant to a duly-approved Rule 12b-1 Plan necessarily equates to "special compensation."  But, as even Plaintiff would have to concede -- and as the *Franklin Templeton* court properly recognized (2010 WL 2348644, at *8) -- neither Rule 202(a)(11)-1 nor the *Financial Planning* decision mentions Rule 12b-1 or Rule 12b-1 Fees. Thus, as the *Franklin Templeton* court ultimately held, Plaintiff's short-cut attempt to use *Financial Planning* as a way to effectively invalidate the lawful payment of Rule 12b-1 Fees is inadequate as a matter of law.[13]

---

[13]     Plaintiff refers to the SEC's recently-proposed rescission of Rule 12b-1 and enactment of Rule 12b-2 as purported evidence of the accuracy of his equation of Rule 12b-1 Fees with "special

     **4.**     **The SEC's recently-issued release in support of proposed Rule 12b-2 provides even more reason to reject Plaintiff's contorted legal theory**

On July 21, 2010, the SEC issued a 278-page Release in which it proposed the rescission of Rule 12b-1 and its replacement with a new Rule 12b-2 and other provisions not here relevant. According to Plaintiff, the Release is noteworthy because it recites that "numerous prominent experts have urged the SEC to address the Advisers Act violation that occurs when Rule 12b-1 fees are paid to broker-dealers, in light of the *Financial Planning Association* decision." Opp. at 14. However, Plaintiff fails to mention that nowhere does the 278-page Release refer to the *Financial Planning Association* case. And, although the SEC does acknowledge in the Release that "[s]ome commenters asserted that broker-dealers receiving [Rule] 12b-1 fees are ineligible for [the broker-dealer] exclusion" and also notes a news article regarding the existence of this and the two other identical lawsuits brought by Plaintiff's counsel (Release at 125 n.372), the most salient aspect of the reference is that the SEC does not indicate any agreement with the assertion of those "commenters."

In fact, it is most telling that the new Rule 12b-2 in no way purports to prohibit broker-dealers from receiving Rule 12b-1 Fees or require that they first register as investment advisers. Surely in the course of replacing Rule 12b-1 with a new regulatory structure, the SEC could have imposed the IAA registration requirement on broker-dealers that Plaintiff here asks this Court to

---

compensation." But neither the proposed Rule nor the Release (SEC Release Nos. 33-9128; 34-62544; IC-29367; File No. S7-15-10 (July 21, 2010), *available at* HTTP://WWW.SEC.GOV/RULES/PROPOSED/2010/33-9128.PDF) regarding the proposed rule establishes such equivalence. Indeed, the relevant portions of the proposed rule are not significantly different from the current Rule 12b-1/FINRA 2830(d) regime. Like the existing regime, Rule 12b-2 would regulate the payment of asset-based compensation for distribution-related services. The most significant difference between Rule 12b-1 and the proposed Rule 12b-2 is that the new rule would cap certain payments and provide for automatic conversion of share classes -- issues not relevant to this litigation.

impose or, for that matter, could have prohibited outright the payment of Rule 12b-1 Fees unless

a fund satisfies the policing role that Plaintiff has sought to cobble together from disparate

elements of the federal securities laws.  Yet, nowhere in the Release does the SEC even refer to

the possibility that the receipt of Rule 12b-2 fees could subject a broker-dealer to any *IAA*

registration requirement -- much less subject a mutual fund distributor to sanctions for failing to

assure that all broker-dealers receiving Rule 12b-2 fees comply with any applicable IAA

registration requirement.[14]  In short, nothing in the Rule 12b-2 Release supports Plaintiff's

radical interpretation of existing law.

### E.       Plaintiff Cannot Obtain Restitution Of The Rule 12b-1 Fees That OFDI Paid To Retail Broker-Dealers

Plaintiff does not dispute Defendants' argument that, because OFDI paid broker-dealers

the Rule 12b-1 Fees that it received from the Fund, OFDI has not retained a benefit conferred

upon it by the Fund.  *See* OFDI Br. at 31-32.  Rather, Plaintiff responds that restitution is

available because OFDI "arranged for broker-dealer services, but failed to arrange for the

Advisers Act services and protections that the law required the broker-dealers to provide the

Trust shareholders," i.e., advisory accounts.  Opp. at 32-33.  Whether or not Plaintiff is correct

that Fund "shareholders are entitled to advisory accounts" (Opp. at 32) is beside the point, as the

Fund never asked OFDI to ensure (nor is it OFDI's responsibility to ensure) that Fund shares are

held by the broker-dealers' clients exclusively in advisory accounts rather than brokerage

---

[14]       Revealingly, the SEC does state in the Release that the "receipt of [Rule 12b-2 Fees] addressed in this Release may, depending on the services provided, require the recipient to register as a *broker-dealer* or rely on an exception or exemption from *broker-dealer* registration."  SEC Release 34-62544 n.9 (emphasis added).

accounts.  Thus, Plaintiff's contention that OFDI failed to provide the services for which the

Fund paid OFDI has no basis.[15]

## II.  THE COURT SHOULD NOT EXERCISE JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS

Plaintiff contends that if this Court dismisses his federal claim, his state claims should

nonetheless survive because they somehow enjoy federal question jurisdiction.  Opp. at 34 n.55.

But, courts typically decline to extend federal question jurisdiction "where the cause of action is

a subject traditionally relegated to state law."  *Morris v. City of Hobart*, 39 F.3d 1105, 1112

(10th Cir. 1994).  In *Morris*, although the plaintiff's breach of contract claim touched upon a

federal statute, the Tenth Circuit found jurisdiction lacking: "[b]ecause contract actions are

traditionally reserved for state courts to resolve, federalism concerns . . . militate against our

exercise of jurisdiction . . . ."  *Id.*; *accord Nicodemus v. Union Pac. Corp.*, 318 F.3d 1231, 1238

(10th Cir. 2003) ("Because [trespass and unjust enrichment] actions are traditionally reserved for

state courts to resolve, federalism concerns also militate against our exercise of jurisdiction

---

[15]    Plaintiff's attempt to evade the statute of limitations by resorting to the doctrine of "adverse domination" (Opp. at 33 n.54) is unavailing.  First, Plaintiff ignores that a company's shareholders, no less than its directors, can cause the company to institute a lawsuit; thus, even if *arguendo* Plaintiff could show that "the directors or officers charged [were] in full, complete and exclusive control of the corporation," *Farmers & Merchants Nat'l Bank v. Bryan*, 902 F.2d 1520, 1523 (10th Cir. 1990), a derivative action will not be tolled if "the shareholders knew or had reason to know of the facts constituting the alleged wrong." *Kahn v. Seaboard Corp.*, 625 A.2d 269, 276-77 (Del. Ch. 1993).  Although shareholders are not required to be "legal experts in the regulation of the financial services industry" (Opp. at 33 n.54), for purposes of tolling analysis they are expected to exercise "reasonable diligence."  *Kahn*, 625 A.2d at 1042.  As set out in Defendants' opening brief (OFDI Br. at 32 n.40), as of October 1, 2007, Fund shareholders would have or, in the exercise of reasonable diligence, should have, possessed all information necessary to cause the Fund to bring the present action -- Plaintiff has not identified any new fact or circumstance essential to his claim that did not exist prior to that date.  Therefore, the statute of limitations is not subject to tolling.  Second, Plaintiff has not even alleged that there was no independent board member who could have asserted a Section 47(b) action against OFDI such that the adverse domination doctrine would apply.

here.").  Similarly, Plaintiff's state law causes of action are of the kind "traditionally reserved for

state courts to resolve."  *See Data Probe Acquisition Corp. v. Datatab, Inc.*, 722 F.2d 1, 4 (2d

Cir. 1983) ("The gravamen of the claim advanced here is a breach of management's fiduciary

duty to shareholders, a matter traditionally committed to state law . . . .").  Therefore, in

accordance with the principles of federalism, the Court should allow a state court to resolve

Plaintiff's state law causes of action.  *See Morris*, 39 F.3d at 1112.

Moreover, the resolution of Plaintiff's state law claims will not require interpretation of

any federal statute.  Plaintiff's breach of contract claim against OFDI does not implicate the IAA

because OFDI is not an investment adviser (and therefore is not subject to the IAA) and because,

contrary to Plaintiff's contention, the broker-dealers are not agents of OFDI -- so their actions

could not possibly breach an agreement between OFDI and the Fund.  *See supra* at I.B.1.  As

Plaintiff admits, his breach of fiduciary duty claim is "asserted based upon the Trustee

Defendants' acts in violation of *state law*, which acts constitute breach of fiduciary duty."

Compl. ¶ 77 (emphasis added).  That Plaintiff adorned his breach of fiduciary duty claim with a

passing reference to SEC Rule 38a-1 does not change the claim's state law character or deprive

state courts of their well-established prerogative to decide corporate mismanagement claims.

*See, e.g., Merrell Dow  Pharm. Inc. v. Thompson*, 478 U.S. 804, 811 (1986) ("[T]he mere

presence of a federal issue in a state cause of action does not automatically confer federal-

question jurisdiction.").  And, Plaintiff's waste claim does not depend on an interpretation of

federal law because the IAA does not make OFDI's payments of Rule 12b-1 Fees to broker-

dealers *de facto* unlawful.

## <u>CONCLUSION</u>

For the foregoing reasons, as well as those set forth in Defendants' initial brief on this motion, the Court should dismiss Plaintiff's Complaint in its entirety.

Dated:  August 24, 2010

*s/ Stephanie Dunn*

Stephanie E. Dunn
PERKINS COIE LLP
1899 Wynkoop Street, Suite 700
Denver, CO  80202-1043
Telephone:  303.291.2300
Facsimile:  303.291.2400
Email:  sdunn@perkinscoie.com

William K. Dodds
DECHERT LLP
1095 Avenue of the Americas
New York, NY  10036-6797
Telephone:  212.698.3557
Facsimile:  212.698.3599
Email: william.dodds@dechert.com

David A. Kotler
DECHERT LLP
902 Carnegie Center, Suite 500
Princeton, New Jersey  08540
Telephone:  609.955.3200
Facsimile:  609.955.3259
Email: david.kotler@dechert.com

***Attorneys for Defendants OppenheimerFunds Distributor, Inc. and John V. Murphy***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of August, 2010, I electronically filed a true and correct copy of the foregoing Reply In Further Support Of Motion To Dismiss For Failure To State A Claim By Defendants OppenheimerFunds Distributor, Inc. And John V. Murphy with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Arthur H. Aufses, III**
  aaufses@kramerlevin.com
- **Lauren Block**
  lblock@milberg.com
- **Jeffrey A. Chase**
  jchase@jcfkk.com, vlsanders@jcfkk.com
- **William K. Dodds**
  william.dodds@dechert.com, luis.lopez@dechert.com
- **Stephanie Erin Dunn**
  sdunn@perkinscoie.com, sdunn-efile@perkinscoie.com
- **David A. Kotler**
  david.kotler@dechert.com
- **Edward Thomas Lyons, Jr.**
  elyons@joneskeller.com
- **Robert Nolen Miller**
  rmiller@perkinscoie.com, rmiller-efile@perkinscoie.com
- **Andrew Wilson Myers**
  amyers@jacobschase.com, cjones@jacobschase.com
- **Janine Lee Pollack**
  jpollack@milberg.com
- Michael Champlin Spencer
  mspencer@milberg.com

*s/ Stephanie Dunn* 
Stephanie E. Dunn
PERKINS COIE LLP
1899 Wynkoop Street, Suite 700
Denver, CO  80202-1043
Telephone:  303.291.2300
Facsimile:  303.291.2400
Email:  sdunn@perkinscoie.com

***Attorneys for Defendants***
***OppenheimerFunds***
***Distributor, Inc. and John V. Murphy***