**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge John L. Kane**

Civil Action No. 10-cv-00655-JLK-KMT

BRADLEY C. SMITH, derivatively on behalf of OPPENHEIMER GOLD & SPECIAL
MINERALS FUND,

      Plaintiff,

v.

OPPENHEIMERFUNDS DISTRIBUTOR, INC.,
BRIAN F. WRUBLE
DAVID K. DOWNES
MATTHEW P. FINK,
PHILLIP A. GRIFFITHS,
MARY F. MILLER,
JOEL W. MOTLEY,
MARY ANN TYNAN,
JOSEPH H. WIKLER
PETER I. WOLD,
JOHN V. MURPHY, and
RUSSELL S. REYNOLDS, JR.,

      Defendants,

OPPENHEIMER GOLD & SPECIAL MINERALS FUND,

      Nominal Defendant.

---

**THE TRUSTEE DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER**
**SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT UNDER RULES**
**12(b)(2), 12(b)(3) AND 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND**
**UNDER 28 U.S.C. § 1406(a)**

---

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES..................................................................................................ii

PRELIMINARY STATEMENT ..........................................................................................1

ARGUMENT........................................................................................................................3

I.   PLAINTIFF HAS FAILED TO MAKE EVEN A <u>PRIMA FACIE</u> SHOWING
     THAT THE COURT POSSESSES PERSONAL JURISDICTION OVER
     THE TRUSTEES.......................................................................................................3

     A.   The Trustees Do Not Have Sufficient Contacts with Colorado ...............................3

     B.   The Court Lacks Pendent Personal Jurisdiction Over the Trustees........................9

II.  PLAINTIFF HAS FAILED TO MAKE EVEN A <u>PRIMA FACIE</u>
     SHOWING THAT VENUE IS PROPER IN THIS DISTRICT .......................................11

III. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE TRUSTEES .........12

     A.   Corporate Waste is Not an Independent Claim ....................................................12

     B.   The Complaint Does Not Adequately Allege Recklessness or Bad Faith.............13

     C.   The Complaint Fails to Allege Causation or Damages .........................................16

     D.   The Court May Enforce the Exculpatory Clause..................................................17

CONCLUSION .................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

Ad Hoc Comm. of Equity Holders of Tectonic Network, Inc. v. Wolford,
    554 F. Supp. 2d 538 (D. Del. 2008) ...............................................................17

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009) .............................................................................14-15

Astra USA, Inc. v. Bildman,
    914 N.E.2d 36 (Mass. 2009).........................................................................12

In re BH S & B Holdings LLC,
    420 B.R. 112 (Bankr. S.D.N.Y. 2009) ........................................................17

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007) .....................................................................................14

Brautigam v. Priest,
    No. 99-365, 2000 WL 291534 (D. Del. March 2, 2000)..................................10 n.6

Cascade Fund, LLLP v. Absolute Capital Mgmt. Holdings Ltd.,
    No. 08-cv-01381, 2010 WL 1380389 (D. Colo. Mar. 31, 2010) ........................8 n.4

City of Philadelphia v. Fleming Cos.,
    264 F.3d 1245 (10th Cir. 2001)......................................................................15

Cory v. Aztec Steel Bldg., Inc.,
    468 F.3d 1226 (10th Cir. 2006)......................................................................10 n.6

Davis v. PNGI Charles Town Gaming, LLC,
    Civ. No. 07-2352, 2007 WL 4553695 (E.D. Pa. Dec. 26, 2007) ......................7 n.3

Emerald Partners v. Berlin,
    787 A.2d 85 (Del. 2001)...............................................................................17

Encore Productions, Inc. v. Promise Keepers,
    53 F. Supp. 2d 1101 (D. Colo. 1999) ..............................................................7

Financial Planning Ass'n v. SEC,
    482 F.3d 481 (D.C. Cir. 2007) ..............................................................14, 15, 16

2791987v.1

Gatz v. Ponsoldt,
  271 F. Supp. 2d 1143 (D. Neb. 2003) .......................................................................... 10 n.6

Gill v. Three Dimension Systems, Inc.,
  87 F. Supp. 2d 1278 (M.D. Fla. 2000) ............................................................................ 10

Goettman v. North Folk Valley Restaurant,
  176 P.3d 60 (Colo. 2007) (en banc) .............................................................................. 5 n.2

Halliburton Co. v. Texana Oil Co.,
  471 F. Supp. 1017 (D. Colo. 1979) ............................................................................... 7 n.3

Hanover Ins. Co. v. Sutton,
  705 N.E.2d 279 (Mass. App. Ct. 1999).......................................................................... 16

Henderson v. Axiam, Inc.,
  No. 962572D, 1999 WL 33587312 (Mass. Super. Ct. June 22, 1999), aff'd,
  797 N.E.2d 502 (Mass. App. Ct. 2003)...................................................................... 13 & n.7

High River Ltd. Partnership v. Mylan Laboratories, Inc.,
  353 F. Supp. 2d 487 (M.D. Pa. 2005) .......................................................................... 10 n.6

Highline Capital Corp. v. Ahdoot,
  Nos. 06-cv-2023 & 06-cv-2024, 2008 WL 486020 (D. Colo. Feb. 20, 2008) ........................ 7

Intercontinental Leasing, Inc. v. Anderson,
  410 F.2d 303 (10th Cir. 1969)...................................................................................... 5 n.2

Jenkins Brick Co. v. Bremer,
  321 F.3d 1366 (11th Cir. 2003)..................................................................................... 12

Jones v. Williams,
  660 F. Supp. 2d 1145 (N.D. Cal. 2009)......................................................................... 7 n.3

Kuenzle v. HTM Sport-UND Freizeitgerate, AG,
  102 F.3d 453 (10th Cir. 1996)......................................................................................... 4

Malpiede v. Townson,
  780 A.2d 1075 (Del. 2001)............................................................................................ 17

Melea, Ltd. v. Jawer SA,
  511 F.3d 1060 (10th Cir. 2007)..................................................................................... 6, 7

2791987v.1

Miller and Rhoads v. West,
    442 F. Supp. 341 (E.D. Va. 1977) ...................................................................4

Miller  v. McCowan De Leeuw & Co. (In re Brown Sch.),
    368 B.R. 394 (Bankr. D. Del. 2007),..........................................................17-18

Minkin v. Commissioner,
    680 N.E.2d 27 (Mass. 1997)..........................................................................4

Morley v. Cohen,
    610 F. Supp. 798 (D. Md. 1985) ...............................................................10 n.6

New York v. Am. Elec. Power Service Corp.,
    Nos. 2:04-CV-1098 & 2:05-CV-360, 2006 WL 840390 (S.D. Ohio Mar. 29, 2006) ..............9

Nicodemus v. Union Pacific Corp.,
    440 F.3d 1227 (10th Cir. 2006)..................................................................11

Noonan v. Winston Co.,
    135 F.3d 85 (1st Cir. 1998) ...................................................................7 n.3

Patrick v. Allen,
    355 F. Supp. 2d 704 (S.D.N.Y. 2005) ..........................................................12

Peay v. BellSouth Med. Assistance Plan,
    205 F.3d 1206 (10th Cir. 2000)................................................................10 n.6

In re Polymedica Corp.,
    No. 01-3446, 2002 WL 1809095 (Mass. Super. Ct. July 16, 2002).......................17

Pytlik v. Prof'l Res. Ltd.,
    887 F.2d 1371 (10th Cir. 1989)...................................................................6

Rambo v. Am. Southern Ins. Co.,
    839 F.2d 1415 (10th Cir. 1988)...................................................................6

Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas,
    675 F.2d 587 (3d Cir. 1982) ..................................................................7 n.3

Rittenmeyer v. Grauer,
    104 S.W.3d 725 (Tex. Ct. App. 2003) ........................................................8 n.4

SEC v. Sealife Corp.,
    375 F. Supp. 2d 1102 (D. Colo. 2005) ......................................................10 n.6

- iv -

Shepherd v. United States Olympic Committee,
    94 F. Supp. 2d 1136 (D. Colo. 2000) ........................................................... 5 n.2

Smith v. Franklin/Templeton Distributors, Inc.,
    No. C-09-4775, 2010 WL 2348644 (N.D. Cal. June 8, 2010) .............................. 16

Spiegel v. Beacon Participations,
    8 N.E.2d 895 (Mass. 1937)............................................................................ 13

Stanziale v. Nachtomi (In re Tower Air, Inc.),
    416 F.3d 229 (3d Cir. 2005) ......................................................................... 17

Systematic, Inc. v. Underwood,
    No. 06-118, 2006 WL 1766179 (D. Or. June 22, 2006) .................................. 9 n.5

In re TASER Int'l S'holder Derivative Litig.,
    CV-05-123, 2006 WL 687033 (D. Ariz. Mar. 17, 2006) ................................... 18

Ten Mile Indus. Park v. Western Plains Serv. Corp.,
    810 F.2d 1518 (10th Cir. 1987)........................................................................ 8

Tripoli Mgmt., LLC v. Waste Connections of Kansas, Inc.,
    No. 09-cv-1767, 2010 WL 845927 (D. Colo. Mar. 9, 2010) ............................ 5 n.2

United States v. Botefuhr,
    309 F.3d 1263 (10th Cir. 2002)........................................................................ 9

Wallace v. Int'l Lifestyles, Inc.,
    No. 06-1468, 2008 WL 623811 (E.D. Pa. Mar. 6, 2008) ........................................ 9

Zanetis v. Calder Bros. Corp.,
    No. 1:09-cv-0025, 2009 WL 3270501 (S.D. Ind. Oct. 9, 2009) ......................... 7 n.3

2791987v.1

## STATUTES & RULES

17 C.F.R. § 270.38a-1(a)(1) ................................................................................3

28 U.S.C. § 1391(b)(2) ......................................................................................11

28 U.S.C. § 1406(a) ............................................................................................1

Fed. R. Civ. P. 12(b)(2) .......................................................................................1

Fed. R. Civ. P. 12(b)(3) .......................................................................................1

Fed. R. Civ. P. 12(b)(6) .......................................................................................1

Mass. Gen. Laws Ch. 156D § 2.02(b)(4) ..........................................................18

## OTHER AUTHORITIES

2 Fletcher Cyc. Corp. § 339 (2010) .....................................................................4

3A Fletcher Cyc. Corp. § 1066 (2010) ................................................................4

2791987v.1

Defendants Brian F. Wruble, David K. Downes, Matthew P. Fink, Phillip A. Griffiths, Mary F. Miller, Joel W. Motley, Mary Ann Tynan, Joseph H. Wikler, Peter I. Wold and Russell S. Reynolds, Jr. (the "Trustees" or "Trustee Defendants"), by their attorneys Jones & Keller, P.C. and Kramer Levin Naftalis & Frankel LLP, submit this reply memorandum of law in further support of their motion to dismiss, with prejudice, Counts III and IV of the shareholder derivative complaint (the "Complaint"), filed by plaintiff Bradley C. Smith on behalf of Oppenheimer Gold & Special Minerals Fund (the "Fund"), under Rules 12(b)(2), 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure and under 28 U.S.C. § 1406(a). The Trustees also join in and incorporate by reference all of the arguments made in the motion to dismiss filed by defendant OppenheimerFunds Distributor, Inc. ("OFDI").

## PRELIMINARY STATEMENT[1]

In their opening brief, the Trustee Defendants showed that none of them has had contacts with the State of Colorado that are sufficient under the Constitution to subject them to personal jurisdiction here; that no substantial part of the events giving rise to Plaintiff's claims occurred in the District of Colorado, and thus that this District is not a proper venue for the claims against the Trustees; and that the Complaint fails to state a single claim upon which relief can be granted against the Trustees. As we show below, none of Plaintiff's points can overcome this showing.

To support personal jurisdiction over the Trustees, Plaintiff relies almost entirely on the fact that the Fund's chief compliance officer ("CCO"), who is not even named as a defendant

---

[1]    This reply memorandum of law refers to the following separate declarations: (1) Declaration of Robert G. Zack in Support of the Motion of the Trustee Defendants to Dismiss the Complaint, dated June 24, 2010, submitted with the Trustees' opening brief (hereinafter "Zack Decl."); and (2) Declaration of Mark S. Vandehey in Support of the Motion of the Trustee Defendants to Dismiss the Complaint, dated August 23, 2010, submitted with this reply memorandum of law (hereinafter "Vandehey Decl.").

here, conducts business in this state.  Plaintiff contends that the CCO's contacts with Colorado may be attributed to the Trustees under an "agency" theory, but he fails to show that the CCO is an agent of the Trustees.  He ignores, for example, the indisputable fact that the CCO is an officer of the Fund, not an employee of the Trustees.  He further forgets that, as a matter of corporate law, corporate officers are not agents of the directors.  And that point has even greater force here, where the Investment Company Act ("ICA"), the statute that created the position of CCO, intended that in key respects the CCO would be independent of fund trustees.

Plaintiff also contends, without a shred of evidence, that the Trustees have "extensive interaction" with the CCO in Colorado.  (Plaintiff's Opposition to Trustee Defendants' Motion to Dismiss ["Opp. Br."] at 7).  That is false.  Since November 2005, the Trustees have had virtually no contact with the CCO in Colorado.  Rather, as explained in the accompanying declaration of the CCO himself, the CCO conducts his business with the Trustees at the Fund's six annual board meetings -- which the CCO attends in-person and which take place in New York.

Finally, Plaintiff argues that the Court may exercise pendent personal jurisdiction over the Trustees by virtue of the nationwide service of process provision of the ICA.  This argument fails, because Plaintiff has asserted only state law claims against the Trustees.  Without a claim against the Trustees under the ICA, there is no federal claim for which this Court independently possesses personal jurisdiction over the Trustees and to which Plaintiff's state law claims can append.

Plaintiff's arguments in support of his choice of venue likewise fail as he has failed to demonstrate that any substantial part of the events giving rise to his claims against the Trustees occurred in Colorado.

2791987v.1

Finally, Plaintiff has failed to demonstrate that the Complaint adequately states a single claim against the Trustees.  He cites no authority for his assertion that corporate waste is an independent claim under Massachusetts law.  He identifies no factual allegations in the Complaint that provide the requisite support for his breach of fiduciary duty claim.  And he fails either to invalidate the Fund's exculpatory clause as a matter of law or to show that the exculpatory clause does not apply to the factual allegations he does make.

## ARGUMENT

### I.

### PLAINTIFF HAS FAILED TO MAKE EVEN A <u>PRIMA FACIE</u> SHOWING THAT THE ~~COURT POSSESSES PERSONAL JURISDICTION OVER THE TRUSTEES~~

#### A.    The Trustees Do Not Have Sufficient Contacts with Colorado

Plaintiff continues to rely on contacts with the District that cannot be attributed to the Trustees, that are not supported by competent proof, or that are not sufficient under the Constitution.  We discuss each of those supposed contacts in turn.

<u>First</u>, Plaintiff tries to attribute to the Trustees the contacts with the State of Colorado of the Fund's chief compliance officer ("CCO").  SEC Rule 38a-1 (the "Rule") requires every registered investment company to designate a person who will be responsible for overseeing the implementation of the policies and procedures of the fund that are to be "reasonably designed to prevent violation of the Federal Securities Laws by the fund, including policies and procedures that provide for the oversight and compliance by each investment adviser, principal underwriter, administrator, and transfer agent of the fund."  17 CFR § 270.38a-1(a)(1) and (4).  The Rule also requires the trustees of every registered investment company to approve the designation and compensation of the CCO, and it authorizes the trustees to remove the CCO from office.

Plaintiff contends that because the Rule confers these powers on the Trustees, the CCO is an "agent" of the Trustees for purposes of jurisdiction.

"An agency relationship cannot be presumed, but rather must be clearly demonstrated." Kuenzle v. HTM Sport-UND Freizeitgerate, AG, 102 F.3d 453, 459 (10th Cir. 1996). The essence of an agency relationship is that the agent "shall act on . . . behalf" of the principal and "subject to [the principal's] control." Id. Plaintiff has failed to show that the CCO is an agent of the Trustees. As a general rule of corporate law, corporate officers are not agents of the corporation's directors. As one of the leading treatises on corporate law puts it, "[A]lthough directors appoint officers . . . , the officers are to be deemed agents of the corporation rather than agents of the directors." 2 Fletcher Cyc. Corp. § 339 (2010); see also 3A Fletcher Cyc. Corp. § 1066 (2010) ("[O]fficers . . . are not agents of the directors but are agents of the corporation."). The courts have recognized this rule as well: "Corporate directors are not agents of the corporation . . . but neither are they the master of the corporation's employees. Their position makes them sui generis in the hierarchy of legal conceptions." Miller and Rhoads v. West, 442 F. Supp. 341, 344 (E.D. Va. 1977) (emphasis added). This rule applies with equal force to the relationship between officers and trustees of business trusts. See generally Minkin v. Commissioner, 680 N.E.2d 27, 31 (Mass. 1997) (holding that there is "no intrinsic difference between a corporate business trust and a corporation").

The principle that corporate officers are not the agents of corporate directors applies with particular force to the relationship between a CCO and the trustees of a mutual fund. The Rule requires every fund to designate a person to be responsible for overseeing the implementation of its compliance policies and procedures. For the CCO to carry out his responsibilities effectively,

- 4 -

2791987v.1

the Rule requires the CCO to be free from undue influence by anyone, including both fund management and fund trustees.  (Vandehey Decl. ¶ 2).  Thus SEC Rule 38a-1(c) states:  "No officer, director or employee of the fund . . . may directly or indirectly take any action to coerce, manipulate, mislead or fraudulently influence the fund's chief compliance officer in the performance of his or her duties under this section."  As a result, the CCO is not an agent of either management or the trustees.[2]

Second, Plaintiff speculates that the "Trustees could not perform their duties without extensive interaction with the CCO."  (Opp. Br. at 7).  This argument likewise fails.  Plaintiff offers no evidence of any – let alone "extensive" – "interactions" between the CCO and the Trustees in Colorado, and the evidence is to the contrary.  The fact is, the CCO has reported to the Trustees only at board meetings and only in New York.  (Vandehey Decl. ¶ 5).  More specifically, from November 2005 to the present:

- The Board has met six times per year.

- Each of those meetings took place in New York.

- The CCO attended each of those meetings in-person in New York, except for two meetings, which he did not attend at all, either in-person or by telephone.

---

[2]   None of the cases cited in Plaintiff's brief supports the assertion of personal jurisdiction over the Trustees under an agency theory.  In Intercontinental Leasing, Inc. v. Anderson, 410 F.2d 303 (10th Cir. 1969), the individual out-of-state defendants were all partners in a Minnesota partnership that transacted business in Kansas.  The partnership's activities in Minnesota were attributed to the out-of-state partners because, under Minnesota statutory law, "'every partner is an agent of the partnership for the purpose of its business.'"  Id. at 305 (citation omitted).  In Goettman v. North Folk Valley Restaurant, 176 P.3d 60, 70 (Colo. 2007) (en banc), the defendant LLC did not deny that its employee was its agent, the question was whether the employee acted within the scope of his employment or agency relationship when he entered into the state of Colorado.  Finally, in Shepherd v. United States Olympic Committee, 94 F. Supp. 2d 1136 (D. Colo. 2000), and in Tripoli Mgmt., LLC v. Waste Connections of Kansas, Inc., No. 09-cv-1767, 2010 WL 845927 (D. Colo. Mar. 9, 2010), the courts declined to exercise personal jurisdiction under an agency theory.

2791987v.1

- Each year, the CCO is required by law to deliver a written report to the Trustees. The CCO delivers that written report to the Trustees, and he otherwise complies with his reporting obligations under Rule 38a-1 at those meetings of the Trustees in New York.

- The CCO does not discuss his written report with the Trustees in advance of the meeting at which he presents the report.

(Id. ¶¶ 4-5).  In short, the Trustees "interact" with the CCO in New York.

As a fall-back, but again without evidence, Plaintiff points to "communication[s]" that the Trustees supposedly "must" have with persons at the Funds' investment adviser and distributor in Colorado -- none of whom he identifies by name, title or function -- "because those are the only entities that carry on the activities of the Trust -- and those offices are primarily in Centennial." (Opp. Br. at 1-2).  But such "communications" provide no basis for the exercise of personal jurisdiction over the Trustees.

In this Circuit "telephone calls and letters may provide sufficient contacts for the exercise of personal jurisdiction," Rambo v. Am. Southern Ins. Co., 839 F.2d 1415, 1418 (10th Cir. 1988) (emphasis added), but such communications are "typically insufficient," Melea, Ltd. v. Jawer SA, 511 F.3d 1060, 1068 n.7 (10th Cir. 2007).  The Trustees have presented evidence that most of OFI's executives and other decision-makers are located at its New York headquarters, and thus that the Trustees communicate only "occasional[ly]" with personnel at OFI's Colorado office. (Zack Decl. ¶ 8).  Plaintiff has submitted no evidence to the contrary.

The Court, therefore, must find these facts to be as the Trustees have presented them. See Pytlik v. Prof'l Res. Ltd., 887 F.2d 1371, 1376 (10th Cir. 1989) ("The plaintiff has the duty

2791987v.1

to support jurisdictional allegations in the complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading."); Highline Capital Corp. v. Ahdoot, Nos. 06-cv-2023 & 06-cv-2024, 2008 WL 486020, at *5 (D. Colo. Feb. 20, 2008) ("Only well-pled facts, as opposed to mere conclusory allegations, must be accepted as true."). Likewise, since Plaintiff has offered no evidence that even one of those occasional communications involved Rule 12b-1 Fees, the Court can only conclude that Plaintiff's claims do not "arise from" any of the Trustees' "occasional" phone calls into the district. See Melea, Ltd., 511 F.3d at 1068 (affirming dismissal of fiduciary duty claim against foreign defendant because claim did not "arise from" defendant's contacts with Colorado).

By claiming that the Court has general jurisdiction over the Trustees (Opp. Br. at 6 n.7), Plaintiff all but concedes that his claims do not "arise from" any such communications. The Trustees' occasional phone calls into the district, however, do not constitute the "systematic and continuous" activity that is needed to establish general personal jurisdiction. See, e.g., Encore Productions, Inc. v. Promise Keepers, 53 F. Supp. 2d 1101, 1116 (D. Colo. 1999) (no general personal jurisdiction over a Georgia resident whose only contacts with Colorado were a handful of telephone calls and one visit). In short, Plaintiff has failed to make even a prima facie showing that the Trustees' occasional communications into this state support the assertion of personal jurisdiction over them here.[3]

---

[3]    See also Noonan v. Winston Co., 135 F.3d 85, 92-93 (1st Cir. 1998) (an out-of-state company's regular and frequent telephone calls, faxes and letters to a Massachusetts company to solicit business were not enough to establish general personal jurisdiction); Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982) (an out-of-state defendant's advertisement in a legal directory in Pennsylvania, even when combined with telephone calls to a Pennsylvania client, still did not constitute sufficient contacts with Pennsylvania to establish general personal jurisdiction); Jones v. Williams, 660 F. Supp. 2d 1145, 1149 (N.D. Cal. 2009) (holding that "[b]y their very nature, phone calls do not approximate physical presence" and cannot give rise to general personal jurisdiction); Davis v. PNGI Charles Town Gaming, LLC, Civ. No. 07-2352, 2007 WL 4553695, at *5

Third, Plaintiff suggests that the Court has personal jurisdiction over the Trustees because the Fund "maintain[s] in this District the required 'minute books of . . . trustees' meetings' and 'trustees' committee and advisory board or advisory committee meetings,' and accounting records for the Trust." (Opp. Br. at 6). This fact, like the size of Oppenheimer's "Centennial campus" (id. at 3), is irrelevant here. As discussed in the Trustees' opening brief at pages 6-9, "[j]urisdiction over the representatives of a corporation may not be predicated on jurisdiction over the corporation itself, and jurisdiction over the individual officers and directors must be based on their individual contacts with the forum state." Ten Mile Indus. Park v. Western Plains Serv. Corp., 810 F.2d 1518, 1527 (10th Cir. 1987). The presence of Fund records in Colorado is not a jurisdictional contact that can be attributed to the Trustees.[4]

Fourth, Plaintiff contends that the Trustees are subject to personal jurisdiction in Colorado because each of the "Trustees has a business address at 6803 Tucson Way, Centennial." (Opp. Br. at 3). But as explained in the Trustees' opening brief, Tucson Way is the address of the Fund's transfer agent and is used merely for processing correspondence. (Zack Decl. ¶ 6). None of the Trustees derives any personal benefit from the Centennial address. The cases cited by Plaintiff are therefore off the mark: In both cases the defendant held itself out as

_____

(E.D. Pa. Dec. 26, 2007) (holding that direct mail and telephone solicitation is not sufficient to confer general personal jurisdiction over defendant). The cases cited by Plaintiff are not to the contrary; both of these cases involve the assertion of specific personal jurisdiction. See Zanetis v. Calder Bros. Corp., No. 1:09-cv-0025, 2009 WL 3270501 (S.D. Ind. Oct. 9, 2009); Halliburton Co. v. Texana Oil Co., 471 F. Supp. 1017 (D. Colo. 1979).

[4]   Plaintiff tries, but fails, to distinguish Ten Mile Indus. Park, and the other cases we cited – Cascade Fund, LLLP v. Absolute Capital Mgmt. Holdings Ltd., No. 08-cv-01381, 2010 WL 1380389, at *9 (D. Colo. Mar. 31, 2010); and Rittenmeyer v. Grauer, 104 S.W.3d 725 (Tex. Ct. App. 2003). Plaintiff argues that those cases "involved either an absence or a bare minimum of contact with the forum state, completely different from the Trustees' contacts with Colorado in this case." (Opp. Br. 9). Plaintiff does not deny that these cases prohibit him from attributing the contacts of the Trust to the Trustees, or that when the courts in those cases analyzed the possible exercise of personal jurisdiction over individual defendants, the courts disregarded the contacts had by the entities with which the individual defendant were affiliated.

doing business in the forum for purposes of soliciting business or otherwise furthering its business interests.  See Wallace v. Int'l Lifestyles, Inc., No. 06-1468, 2008 WL 623811, at *2 (E.D. Pa. Mar. 6, 2008) (defendant advertised an office in the forum); New York v. Am. Elec. Power Service Corp., Nos. 2:04-CV-1098 & 2:05-CV-360, 2006 WL 840390, at *7 (S.D. Ohio Mar. 29, 2006) (defendant presented itself as doing business in the forum "to further its business interests").[5]

**B.   The Court Lacks Pendent Personal Jurisdiction Over the Trustees**

For a court to exercise pendent personal jurisdiction over a defendant, there must first be at least one federal claim against that same defendant.  Thus pendent personal jurisdiction "exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact[s], and then, because it possesses personal jurisdiction over the first claim, [the court] asserts personal jurisdiction over the second claim."  United States v. Botefuhr, 309 F.3d 1263, 1272 (10th Cir. 2002).  In other words, "once a district court has personal jurisdiction over a defendant for one claim, it may 'piggyback' onto that claim other claims over which it lacks independent personal jurisdiction provided that all claims arise from the same facts as the claim over which it has proper personal jurisdiction."  Id. (citation omitted).

Plaintiff has not asserted any claim under the ICA against the Trustees.  Thus the ICA does not provide independent personal jurisdiction over the Trustees.  Absent a claim against the

---

[5]    Plaintiff also relies on Systematic, Inc. v. Underwood, No. 06-118, 2006 WL 1766179 (D. Or. June 22, 2006).  Personal jurisdiction in that case, however, was not based on the defendant's "use of [an] Oregon address on official business documents."  (Opp. Br. at 7).  It was based on "the duration of the parties' contractual relationship as well as the annual volume of business transacted."  2006 WL 1766179, at *3.

Trustees for which the Court has independent personal jurisdiction, the Court may not exercise

pendent personal jurisdiction over the Trustees with respect to the state law claims.

For example in, Gill v. Three Dimension Systems, Inc., 87 F. Supp. 2d 1278 (M.D. Fla.

2000), the plaintiff, Gill, asserted both state law claims and claims under the federal securities

laws against two corporate defendants and against one individual defendant (the "securities

defendants"). Id. at 1283. Gill separately alleged only state law claims against two other

individual defendants (the "state law defendants"). Id. at 1283-84. Both the securities

defendants and the state law defendants moved to dismiss the complaint for lack of personal

jurisdiction. Id.

The court held that the nationwide service of process provision of the federal securities

laws provided personal jurisdiction over the securities defendants with respect to both the federal

and the state law claims. Id. at 1283. But the court noted that it lacked personal jurisdiction over

the state law defendants because, unlike the securities defendants, the state law defendants "are

not subject to the federal securities claim and are thus not already properly before this Court as a

matter of personal jurisdiction." Id. at 1284 n.4. For the same reason, this Court cannot exercise

pendent personal jurisdiction over the Trustees.[6]

---

[6]   See also High River Ltd. Partnership v. Mylan Laboratories, Inc., 353 F. Supp. 2d 487, 496 (M.D. Pa.
2005) (the Securities Exchange Act's nationwide service of process provision created personal jurisdiction over a
defendant against whom the plaintiff had asserted a federal securities fraud claim, but the statute could not confer
personal jurisdiction over a co-defendant against whom the plaintiff had asserted only state law claims); Gatz v.
Ponsoldt, 271 F. Supp. 2d 1143, 1154 (D. Neb. 2003) (holding that pendent personal jurisdiction could be exercised
over defendants against whom RICO claims and state law claims were asserted, but could not be exercised over
defendants against whom only state law claims were asserted); Morley v. Cohen, 610 F. Supp. 798, 822-23 (D. Md.
1985) (RICO statute's nationwide service of process provision could not be applied to defendants against whom
only state law claims were asserted).

The cases cited by Plaintiff are not to the contrary. In both Cory v. Aztec Steel Bldg., Inc., 468 F.3d 1226 (10th
Cir. 2006) and Brautigam v. Priest, No. 99-365, 2000 WL 291534 (D. Del. March 2, 2000), the plaintiffs asserted
against the same defendants both state law claims and claims under federal statutes that contained a nationwide

Plaintiff insists that the Court may exercise pendent personal jurisdiction over the Trustees, because the validity of the state law claims against the Trustees "'necessarily depends'" on there being a tenable federal ICA claim against them.  (Opp. Br. at 10).  For authority, Plaintiff relies exclusively on Nicodemus v. Union Pacific Corp., 440 F.3d 1227, 1232 (10th Cir. 2006)).  But Nicodemus gives no help to Plaintiff.  It presented only the question whether the court possessed subject matter jurisdiction over a state law claim.  It says nothing about personal jurisdiction.

## II.

## PLAINTIFF HAS FAILED TO MAKE EVEN A PRIMA FACIE SHOWING THAT VENUE IS PROPER IN THIS DISTRICT

Colorado is not a proper venue for this action because no substantial part of the events giving rise to Plaintiff's claims occurred in Colorado.

Plaintiff does not deny that New York is a proper venue for this action under 28 U.S.C. § 1391(b)(2) because the "asset-based compensation arrangements were approved there."  (Opp. Br. at 11 n.12).  Plaintiff contends only that Colorado also is a proper venue under Section 1391(b)(2), because "Oppenheimer's compliance, accounting, and broker-dealer servicing functions" are located there and the "documents relevant to this action, including all documents relating to board meetings, are also maintained" there.  (Id. at 11).  Plaintiff is in error.

In the analysis of venue, "[o]nly the events that directly give rise to a claim are relevant[,] . . . [a]nd of the places where the events have taken place, only those locations hosting a

---

service of process provision (i.e. RICO and the ICA).  And in Peay v. BellSouth Med. Assistance Plan, 205 F.3d 1206 (10th Cir. 2000) and SEC v. Sealife Corp., 375 F. Supp. 2d 1102 (D. Colo. 2005), pendent personal jurisdiction was not even an issue, because the plaintiffs asserted claims only under federal statutes that contain a nationwide service of process provision (i.e. ERISA and the Securities Act).

2791987v.1

'substantial part' of the events are to be considered." <u>Jenkins Brick Co. v. Bremer</u>, 321 F.3d 1366, 1371 (11th Cir. 2003). Plaintiff has failed to show that any "substantial part" of the events giving rise to his claim took place in Colorado.

The Complaint challenges the payment of Rule 12b-1 Fees. Since at least November 2005, the Fund has approved those fees pursuant to a Rule 12b-1 Plan that the Trustees approved in-person, as required by law, at meetings held in New York. (Zack Decl. ¶¶ 8-9). The claims being asserted against the Trustees arise from those approvals, all in New York. The fact that the CCO has an office in Colorado is irrelevant. As noted, in the last five years, the CCO has attended all regularly scheduled meetings in-person and in New York, except for two meetings, which he did not attend at all, either in-person or by telephone. The evidence establishes, therefore, that no substantial part of the events giving rise to this action took place in the District of Colorado.

**III.**

**THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE TRUSTEES**

**A.      <u>Corporate Waste is Not an Independent Claim</u>**

Plaintiff contends that corporate waste and breach of fiduciary duty are separate claims under Massachusetts law, but he cites no authority to support this contention. In fact, neither of his cited cases applies Massachusetts law. <u>See</u> <u>Patrick v. Allen</u>, 355 F. Supp. 2d 704 (S.D.N.Y. 2005) (applying New York law); <u>Astra USA, Inc. v. Bildman</u>, 914 N.E.2d 36 (Mass. 2009) (same). And as Plaintiff himself admits, <u>Astra USA, Inc.</u>, contains no discussion of whether a corporate waste claim is separate from a breach of fiduciary duty claim. In contrast, the Trustees have shown that Massachusetts courts, applying Massachusetts law, do treat a corporate waste

- 12 -

claim as being a kind of claim for breach of fiduciary duty.  See Henderson v. Axiam, Inc., No. 962572D, 1999 WL 33587312, at *48 (Mass. Super. Ct. June 22, 1999), aff'd, 797 N.E.2d 502 (Mass. App. Ct. 2003).[7]

**B.**      **The Complaint Does Not Adequately Allege Recklessness or Bad Faith**

Plaintiff further contends that he has adequately stated each of his claims.  But he has not shown that his Complaint pleads facts that would support any claim that is not otherwise barred by the Fund's exculpatory clause.   That clause states:

> . . . . All persons . . . doing business with, contracting with or having or asserting any claim against the Trust or the Trustees shall look only to the assets of the Trust for payment under any such . . . transaction, contract or claim; and neither the Shareholders nor the Trustees, nor any of their agents, whether past, present or future, shall be personally liable therefor; . . . . Nothing in this Declaration of Trust shall protect a Trustee against liability to which such Trustee would otherwise be subject by reasons of willful misfeasance, bad faith, gross negligence or reckless disregard of the duties involved in the conduct of the office of Trustee hereof.

(Zack Decl. Ex. 3, Article NINTH (2), at page 23-24).

The only conduct that is not protected by the exculpatory clause is "willful misfeasance, bad faith, gross negligence or reckless disregard" of the "duties involved in the conduct" of the office of Trustee.   (Id.)   This is consistent with Massachusetts law.   See Spiegel v. Beacon Participations, 8 N.E.2d 895, 904, 907 (Mass. 1937) (directors "cannot be held responsible for mere errors of judgment or want of prudence" and bad faith is "not merely negligence.").

---

[7]    Plaintiff says that in Henderson both claims rested on the same factual allegations, and for that reason alone, the Henderson court treated the two claims as being one.  If that is true, Henderson still controls here, because this Plaintiff's claims for breach of fiduciary duty and for corporate waste rest on the same factual allegations.

2791987v.1

Plaintiff concedes that his Complaint neither alleges "willful misfeasance" nor otherwise pleads a claim for breach of the duty of loyalty.   He contends, however, that his Complaint alleges that the Trustees acted with "reckless disregard" and in "bad faith," and thus that they breached their duty of care.  (Opp. Br. at 16).

In the Complaint, any such allegations are wholly conclusory and implausible, and thus they cannot survive a motion to dismiss.  For example, the Complaint alleges that following the ruling in Financial Planning Ass'n v. SEC, 482 F.3d 481 (D.C. Cir. 2007) (the "Financial Planning decision"), broker-dealers who receive Rule 12b-1 Fees in connection with Fund shares held in brokerage accounts are required to register under the Investment Advisers Act.  (Compl. ¶¶ 33-37).  The Complaint further alleges that the Trustees had "an affirmative duty" under Rule 38a-1 "to investigate the legality of the broker-dealer compensation payments" (Compl. ¶ 79), and that the Trustees' breached that duty by failing to "ascertain whether [OFDI] had compliance policies and procedures in place to ensure that [Rule 12b-1 Fees] . . . [are] paid only to registered investment advisers, or broker-dealers that are dual registrants, and that [Fund] shares upon which such compensation is paid are held in advisory accounts governed by the Advisers Act." (Id. ¶ 52).

The Complaint labels this conduct as "reckless" and as evidence of "bad faith."  (Id. ¶¶ 79 & 81).  Labels, however, are no substitute for facts.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (holding that a plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").  In analyzing the sufficiency of a complaint, a court must identify "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950

(2009). While a court must assume the veracity of any "well-pleaded factual allegations," it must determine whether such allegations "plausibly give rise to an entitlement to relief." Id. at 1940-41. Where factual allegations are "merely consistent with" a defendant's liability, they "stop[] short of the line between [the inadequate] possibility and [the required] plausibility of 'entitlement to relief.'" Id. at 1949. When viewed in light of these principles, Plaintiff's conclusory assertions do not come close to making out a proper claim of "bad faith" or "reckless disregard."

The Tenth Circuit has defined "[r]ecklessness" as being "'conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading . . . that is either known to the defendant or is so obvious that the actor must have been aware of it,'. . . .'" City of Philadelphia v. Fleming Cos., 264 F.3d 1245, 1258 (10th Cir. 2001) (citation omitted). For decades, the payment of Rule 12b-1 fees by mutual funds has been anything but an extreme "departure from the standards of ordinary care" -- it has been the norm, carried out by thousands of funds.

Thirty years ago, the Securities and Exchange Commission ("SEC") enacted Rule 12b-1 to, among other things, permit mutual funds, such as the Fund, to make distribution-related payments from fund assets to the fund's distributor and to any broker-dealer that distributes fund shares to investors. Since then, thousands of mutual fund boards have approved, with shareholder consent, the payment of Rule 12b-1 Fees. Not once during those thirty years has any court or regulator ever held that payment or receipt of Rule 12b-1 Fees is de facto unlawful. That includes the Financial Planning decision.

As discussed at length in OFDI's motion papers, the U.S. District Court for the Northern District of California recently dismissed an identical complaint filed by this Plaintiff on behalf of another fund against the fund's trustees and distributor.   Smith v. Franklin/Templeton Distributors, Inc., No. C-09-4775, 2010 WL 2348644 (N.D. Cal. June 8, 2010).  In that decision, the court held that the Financial Planning decision does not apply to Rule 12b-1 Fees and, even if it did, the payments at issue were not unlawful, and neither the fund nor its trustees had any duty under Rule 38a-1 to ensure that the broker-dealer receiving such Fees were registered investment advisers. Id. at *8.

The regulatory record of the last thirty years, capped by the decision in Franklin/Templeton, demonstrates that in their handling of Rule 12b-1 Fees, the Trustees may be charged with, at worst, a mistake of law.  Because such conduct is not actionable under Massachusetts law and is protected by the exculpatory clause, the Complaint must be dismissed.

### C.   The Complaint Fails to Allege Causation or Damages

As discussed in our opening brief -- but ignored in Plaintiff's papers -- the Complaint fails to state a claim for another reason.  As Plaintiff himself recognizes, causation and damages are essential elements of a claim for breach of fiduciary duty.  See Hanover Ins. Co. v. Sutton, 705 N.E.2d 279, 288 (Mass. App. Ct. 1999).  The Complaint alleges that the Trustees breached their fiduciary duties "to the extent" that any broker-dealer violated its obligations under the federal securities laws, (Compl. ¶ 49), but the Complaint does not allege even in a conclusory manner that any broker-dealer actually breached its obligations under the federal securities laws at all – let alone as a result of the Trustees' alleged failure to oversee the compliance policies at OFDI.  Accordingly, the claims asserted against the Trustees must be dismissed.

**D.**     **The Court May Enforce the Exculpatory Clause**

Relying almost exclusively on Delaware law, Plaintiff contends that the Trustees may not raise the exculpatory clause on a motion to dismiss because it is in the nature of an affirmative defense.  That is not correct.  An exculpatory clause does provide the basis for an affirmative defense, but such clauses can be considered on a motion to dismiss if, as here, "a complaint unambiguously and solely assert[s] only" a claim for breach of the duty of care.  Malpiede v. Townson, 780 A.2d 1075, 1093 (Del. 2001); accord Emerald Partners v. Berlin, 787 A.2d 85, 91 (Del. 2001) ("it is appropriate for the Court of Chancery to consider a properly raised [exculpatory] provision in a pretrial context . . . ."); In re BH S & B Holdings LLC, 420 B.R. 112, 145 (Bankr. S.D.N.Y. 2009) (citing Malpiede and recognizing that the "Court may take judicial notice of an exculpatory provision at the motion to dismiss stage").  Here, the Plaintiff asserts only a claim for breach of the duty of care.

None of Plaintiff's cited cases are to the contrary.  In In re Polymedica Corp., No. 01-3446, 2002 WL 1809095 (Mass. Super. Ct. July 16, 2002), the court held only that the complaint had adequately alleged that a majority of directors personally benefited from the challenged transaction, and that such allegations satisfied the demand futility standard without regard to whether the directors also had a substantial likelihood of personal liability.  In Stanziale v. Nachtomi (In re Tower Air, Inc.), 416 F.3d 229, 242 (3d Cir. 2005), the Third Circuit declined to consider an exculpatory clause that was first raised on appeal.  In both Polymedica and Stanziale, any comments about whether an exculpatory clause may be considered on a motion to dismiss were mere dicta.  All of the other cases that Plaintiff cites on this point involved a claim for breach of the duty of loyalty and, as a result, any exculpatory clause could not be considered

- 17 -

because such clauses cannot be used to bar a duty of loyalty claim.  Here, in contrast, Plaintiff

has not asserted a claim for breach of the duty of loyalty.  See Ad Hoc Comm. of Equity Holders

of Tectonic Network, Inc. v. Wolford, 554 F. Supp. 2d 538, 561 (D. Del. 2008); Miller v.

McCowan De Leeuw & Co. (In re Brown Sch.), 368 B.R. 394 (Bankr. D. Del. 2007); In re

TASER Int'l S'holder Derivative Litig., CV-05-123, 2006 WL 687033 (D. Ariz. Mar. 17, 2006).

   Plaintiff also contends that the exculpatory clause violates Massachusetts General Laws

Chapter 156D, Section 2.02(b)(4), which governs the inclusion of exculpatory provisions in

corporate charters.  Plaintiff says that this exculpatory clause "is overly broad and attempts to

shield the Trustees from liability for actions not covered by the statute, including errors of

judgment or mistakes of fact or law."  (Opp. Br. at 19).  There is no support for this contention.

To the contrary, the exculpatory clause is more restrictive than the statute.  Unlike the statute, the

exculpatory clause denies protection to conduct amounting to "gross negligence."  Compare

Mass. Gen. Law ch. 156D § 2.02(b)(4) with Zack Decl. Ex. 3, Article NINTH (2), at page 23-

24).

   Both the statute and the exculpatory clause, however, protect directors from liability for

errors of judgment and mistakes of fact and law.  The statute authorizes corporations to include a

provision in their charters "eliminating or limiting the personal liability of a director to the

corporation for monetary damages for breach of fiduciary duty as a director notwithstanding any

provision of law imposing such liability."  Mass. Gen. Laws. Ch. 156D § 2.02(b)(4).  The statute

then carves out specific conduct that may not be exculpated, but the statute nowhere states that

"errors of judgment or mistakes of fact or law" may not be exculpated.  Nor does the statute bar a

business trust from providing exculpation for any of the other forms of conduct that are covered

- 18 -

by the Fund's exculpatory clause.  Thus the Fund's exculpatory clause is completely consistent with the statute.  Plaintiff cannot delay dismissal of this action and compel the Trustees to incur costly and unnecessary discovery simply by raising a baseless objection to the exculpatory clause.

2791987v.1

## CONCLUSION

For all of these reasons and for those set forth in the Trustees' initial moving papers and in OFDI's papers, the Trustees respectfully urge the Court to dismiss, with prejudice, all claims that have been asserted against the Trustees.

Dated:   New York, New York
         August 24, 2010

         s/ Edward T. Lyons, Jr.
Edward T. Lyons, Jr.
Jones & Keller, P.C.
1999 Broadway, Suite 3150
Denver, Colorado 80202
(303) 573-1600

-and-

         s/ Arthur H. Aufses III
Arthur H. Aufses III
Yehudis Lewis
Nakeeb Siddique
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

*Attorneys for Defendants Brian F. Wruble,*
*David K. Downes, Matthew P. Fink,*
*Phillip A. Griffiths, Mary F. Miller,*
*Joel W. Motley, Mary Ann Tynan,*
*Joseph H. Wikler, Peter I. Wold,*
*and Russell S. Reynolds, Jr.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of August, 2010, I electronically filed a true and correct copy of the foregoing **THE TRUSTEE DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT UNDER RULES 12(b)(2), 12(b)(3) AND 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND UNDER 28 U.S.C. § 1406(a)** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Jeffrey A. Chase**
  jchase@jcfkk.com,vlsanders@jcfkk.com

- **William K. Dodds**
  william.dodds@dechert.com,luis.lopez@dechert.com

- **Stephanie Erin Dunn**
  sdunn@perkinscoie.com,sdunn-efile@perkinscoie.com

- **David A. Kotler**
  david.kotler@dechert.com

- **Robert Nolen Miller**
  rmiller@perkinscoie.com,rmiller-efile@perkinscoie.com

- **Andrew Wilson Myers**
  amyers@jacobschase.com,cjones@jacobschase.com

- **Janine Lee Pollack**
  jpollack@milberg.com

- **Lauren Block**
  lblock@milberg.com

- **Michael Champlin Spencer**
  mspencer@milberg.com

s/ Edward T. Lyons, Jr.
Edward T. Lyons, Jr.

2791987v.1