IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-00654-JLK-KMT

BRADLEY C. SMITH, derivatively on behalf of OPPENHEIMER QUEST FOR VALUE FUNDS,

Plaintiff,

v.

OPPENHEIMERFUNDS DISTRIBUTOR, INC.,
MATTHEW P. FINK,
PHILLIP A. GRIFFITHS,
MARY F. MILLER,
JOEL W. MOTLEY,
MARY ANN TYNAN,
JOSEPH H. WIKLER,
PETER I. WOLD,
BRIAN F. WRUBLE,
DAVID K. DOWNES,
RUSSELL S. REYNOLDS, JR.,
WILLIAM F. FAVIN,
THOMAS W. COURTNEY,
LACY B. HERRMANN, and
JOHN V. MURPHY,

Defendants,

OPPENHEIMER QUEST FOR VALUE FUNDS,

Nominal Defendant.

---

Civil Action No. 10-cv-00655-JLK-KMT

BRADLEY C. SMITH, derivatively on behalf of OPPENHEIMER GOLD & SPECIAL MINERALS FUND,

Plaintiff,

v.

OPPENHEIMERFUNDS DISTRIBUTOR, INC.,
BRIAN F. WRUBLE,
DAVID K. DOWNES,
MATTHEW P. FINK,
PHILLIP A. GRIFFITHS,
MARY F. MILLER,
JOEL W. MOTLEY,
MARY ANN TYNAN,
JOSEPH H. WIKLER,
PETER I. WOLD,
JOHN V. MURPHY, and
RUSSELL S. REYNOLDS, JR.,

Defendants,

OPPENHEIMER GOLD & SPECIAL MINERALS FUND,

Nominal Defendant.

---

ORDER ON DEFENDANTS' AMENDED MOTIONS TO TRANSFER VENUE
TO THE SOUTHERN DISTRICT OF NEW YORK
PURSUANT TO 28 U.S.C. §§ 1404(a) & 1406(a)

---

KANE, J.

Plaintiff commenced both of these putative shareholder derivative actions in this District, asserting substantively identical claims on behalf of Oppenheimer Quest for Value Fund ("Quest Trust" or "-Fund") and Oppenheimer Gold & Special Minerals Fund ("Minerals Trust" or "-Fund")(collectively, the "Trusts"). The Trusts, organized as Massachusetts business trusts, are classified under federal securities laws as "open-end management investment companies" comprised of mutual fund series or portfolios. In Civil Action 10-cv-654-JLK (the "Quest Fund Action"), Plaintiff Bradley C. Smith sues on behalf of the Quest Trust as a Class C shareholder in the Trust's Oppenheimer Small-

& Mid-Cap Fund. In 10-cv-655-JLK (the "Minerals Fund Action"), Smith sues on behalf of the Minerals Trust as a shareholder in the Oppenheimer Gold & Special Minerals Fund. In both cases, Smith claims the Trusts, acting through their individual Fund trustees ("Trustee") and their exclusive distributor/underwriter OppenheimerFunds Distributor, Inc. ("Distributor"), are unlawfully depleting Fund assets by approving and providing for payment of "asset-," rather than transaction-, "based compensation" to broker-dealer firms holding Fund shares in brokerage accounts in contravention of the Investment Advisers Act of 1949 ("Advisers Act"), Section 47(b) of the Investment Company Act of 1940 ("ICA"), and *Financial Planning Association v. SEC*, 482 F.3d 481 (D.C. Cir. 2007). Smith seeks declaratory and injunctive relief prohibiting the continued payment of asset-based compensation to broker-dealers, restitution from the Distributor of past payments, and damages from the Trustees for breach of fiduciary duties under Massachusetts law.

Defendants move in both cases to dismiss and to transfer venue to the Southern District of New York. I deal here with the Motions to Transfer Venue only.

In the Quest Fund Action, Defendants invoke a mandatory forum selection clause added in the Oppenheimer Quest for Value Funds' Amended Declaration of Trust ("Amended Declaration")[1] to argue venue is proper only in New York and seek an order

---

[1] Specifically, Article IX, § 11.4(d) of the Amended Declaration provides that

> [a]ny action commenced by a Shareholder, directly or derivatively, against the Trust or a Series or Class thereof, [or] its Trustees . . . shall be brought only in the

for transfer to the Southern District of New York under 28 U.S.C. § 1406(a). The Minerals Trust documents apparently contain no forum selection clause, but because of the identity of claims and parties between the two actions, Defendants contend the interests of efficiency and convenience warrant the simultaneous transfer of that action with the Quest Action under 28 U.S.C. § 1404(a).

In the alternative, Defendants argue transfer is appropriate under 28 U.S.C. § 1404(a) independent of the Quest Declaration's forum selection clause because Smith's claims simply have no nexus with Colorado and instead a very close one with New York. *See* Am. Mots. to Transfer Venue (Doc. 20 in 10-cv-654-JLK and Doc. 18 in 10-cv-655-JLK). According to Defendants, Plaintiff is a citizen of North Carolina, challenging, on behalf of mutual fund trusts organized under Massachusetts law, payment and disbursement decisions made in New York, to be carried out by agents centered in New York, made by Fund Trustees who are based on the East Coast, simply on the basis that both the Trusts and their Trustees use the mailing address of their investment adviser, OppenheimerFunds, Inc., as their mailing address in their SEC filings. In the absence of any substantive connection of the compensation plan decisions at issue to Colorado, or

---

> U.S. District Court for the Southern District of New York, or if such action may not be brought in that court, then . . . in NY state court (the "Chosen Courts"). The Trust, its Trustees and officers, and its Sharholders (a) waive any objection to venue in either Chosen Court and (b) waive any objection that either Chosen Court is an inconvenient forum.

Am. Decl. Trust (attached as Ex. D (Doc. 35-5) to Suppl. Decl. of Robert G. Zack in Supp. of Defs' Am. Mot. to Transfer Venue in 10-cv-654-JLK)(Doc. 35-1).

the need to apply Colorado law, Defendants argue Plaintiff's choice of forum is entitled to little deference, and urge a transfer to New York for the convenience of Defendants, their agents, and all or most of the anticipated witnesses.

Having considered carefully the parties' briefs and related legal authorities, and without reaching the question of whether Plaintiff is bound by the terms of the Quest Declaration's forum selection clause, I agree that the Southern District of New York provides a more appropriate forum for both actions under 28 U.S.C. § 1404(a) and GRANT the Amended Motions to Transfer.

BACKGROUND.

Mutual funds organized as trusts are governed by boards of trustees. Trustees have primary responsibility for service providers' compliance with federal and relevant state securities laws in connection with the distribution of fund shares, including compensation for broker-dealers holding those shares in brokerage accounts throughout the country. Here, the Quest and Minerals Fund Trusts have appointed Distributors their exclusive agent for performing distribution-related services, including compensating broker-dealers for their services.

Plaintiff is a resident of North Carolina and owner of Class C shares of both Quest and Mineral Trust mutual fund series. As previously stated, the Trusts are Massachusetts business organizations with mailing addresses at the Colorado headquarters of OppenheimerFunds, Inc. (OFI), a nonparty to these Actions. Distributor is a New York corporation with its principal place of business in New York City, but also uses OFI's

Centennial headquarters as its mailing address. The Trusts' Boards of Trustees meet in New York and their individual members, with the exception of Wyoming resident Wold, reside in states along the eastern seaboard.[2] According to Plaintiff, he commenced these actions and venue is appropriate in the District of Colorado because the Trust "maintains its headquarters in Colorado" and because "many of the acts complained of herein occurred in this District." Compl. ¶ 9. With respect to the Quest Declaration's forum selection clause, Plaintiff denies it applies to the Quest Action because two of his three derivative claims in that case are against the Distributor, which is not a party to the Declaration, and contends the clause is unenforceable with regard to his breach of fiduciary duty claim against the Trustees because it was passed as part of an amendment to the operative Declaration without reasonable notice to shareholders as necessary under federal law.

Defendants dispute the assertion that the clause does not apply, but also specifically challenge Plaintiff's factual contentions with regard to the Trusts' presence in, and these Actions' connection with, the state of Colorado. Defendants deny either Trust is "headquartered" in this district and, with various Declarations and documentary evidence, contend all of the Trust and Trustee actions and decisions of which Plaintiff

[2] All 11 of the Mineral Fund Trustees are also Quest Trustees. The Quest Fund also includes three additional names: William Favin, Thomas Courtney, and Lacy Herrman. As stated in Distributor counsel's Declaration in the Quest Action (10-cv-654, Doc. 20-1), besides Wold, the remaining 13 Trustee Defendants reside in New York (Glavin, Herrmann, Miller, Motley, and Wruble); Maryland (Fink, Griffiths, and Wikler); Pennsylvania (Courtney and Downes); Massachusetts (Murphy and Tynan); and Connecticut (Reynolds).

complains occurred in New York, which is where Board meetings are held and where the Distributor's directors and other agents operate, where most of the non-party broker-dealers operate, and where almost all relevant documents and witnesses reside. Quest Action Am. Mot. Transfer Venue (Doc. 20) at pp. 9-10 (and attached Declaration of Distributor General Counsel Robert G. Zack).

DISCUSSION.

The forum selection clause issue is problematic because the Amended Declaration includes several disputed provisions, in addition to the forum selection clause, that arguably apply in the Quest Action but which need not be reached to rule on the § 1406(a) grounds for transfer. For example, the Declaration includes an "exculpatory clause" limiting a shareholder's rights to pursue claims and obtain recovery against a Trustee (Article IX, § 9.2(b)), which forms one of the grounds for dismissal urged by the Defendant Trustees in Quest. It also imposes comprehensive notice and demand requirements on any shareholder seeking to bring a derivative action against the Trust, subjects that shareholder to payment of attorney fees for filing suit in contravention of those requirements (*id.* § 9.8), and includes an express waiver of the right to jury trial (*id.* § 11.4(e). Because Smith's Complaint in the Quest Action includes a jury demand and makes no mention of having complied with the Declaration's notice and demand requirements, a determination the forum selection clause applies may inadvertently and prematurely constitute a determination that impacts the whole of Smith's Complaint.

Accordingly, I will consider only Defendants' Motions to Transfer under 28

U.S.C. § 1404(a) at this stage of the proceedings. If the related cases are properly transferable to the Southern District of New York under § 1404(a), the question of whether and to what extent the Amended Declaration applies to Smith's claims in the Quest Action is best left to the transferee court to address in conjunction with the Motions to Dismiss. If transfer is unwarranted under 28 U.S.C. § 1404(a), then I will consider the Amended Declaration's application and effect in the first instance.

<u>Section 1404(a)</u>.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The party seeking to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient. *Chrysler Credit Corp. v. County Chrysler, Inc.*, 928 F.2d. 1509, 1515 (10th Cir. 1991). In ruling on a motion to transfer venue, district courts must assess two issues: (1) whether the case might have been brought in the proposed transferee district, and (2) whether the "competing equities" weigh in favor of adjudicating the case in the that district. *Hustler Magazine, Inc. v. U.S. Dist. Court for the Dist. of Wyo.*, 790 F.2d 69, 71 (10th Cir. 1986). The competing equities include the following factors:

> [1] plaintiff's choice of forum; [2] the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; [3] the cost of making the necessary proof; [4] questions as to the enforceability of a judgment if one is obtained; [5] relative advantages and obstacles to a fair trial; [6] difficulties that may arise from congested dockets; [7] the possibility of the existence of questions arising in the area of conflict of laws; [8] the advantage of having a local court determine

> questions of local law; and [9] all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp.*, 928 F.2d at 1516 (*quoting Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)). The ultimate decision to transfer an action lies in the sole discretion of the district court and should be based on an "individualized, case-by-case consideration of convenience and fairness." *Texas E. Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561, 567 (10th Cir. 1978); *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

<u>The Balance of Equities Favors Transfer</u>.

There is no dispute that Smith may have properly brought both lawsuits in the Southern District of New York. To the extent the Adviser's Act and ICA provide a private right of action to shareholders under the facts alleged (which Defendants dispute) the New York district court would have had subject matter jurisdiction over Smith's federal claims and supplemental jurisdiction over his state law claims at the time Smith filed suit. Based on the residence of the parties and Defendants' contacts with New York, personal jurisdiction and venue would have been appropriate in the Southern District as well. The gist of Defendants' argument in support of transfer is that, given the lack of any substantive connection of Smith's claims to Colorado, the competing equities weigh strongly in favor of transfer. I agree.

A plaintiff's choice of forum is generally entitled to considerable weight, *see Texas Gulf Sulphur co. v. Ritter*, 371 F.2d 145, 147 (10thCir. 1967), but less so where the

chosen forum is not plaintiff's place of residence and where plaintiff himself lacks meaningful contact with the state. *See Shesol v. I.V. House, Inc.*, No. 06-cv-02551, 2008 WL 410587, at *2 (D. Colo. Feb. 13, 2008) *(citing Hartford Fire Ins. Co. v. Westinghouse Elec. Corp.*, 725 F. Supp. 317, 322 (S.D. Miss. 1989) (granting Defendant's motion to transfer venue when Plaintiff had already filed related actions in two other states and the chosen forum had no relation to the litigation)) (granting Defendant's motion to transfer venue to the Eastern District of Missouri when Defendant's principal place of business was Missouri and Defendant was a Missouri corporation). If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, plaintiff's choice is entitled to only minimal consideration. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).

Smith is not a resident of Colorado, and did not come to Colorado in connection with any of his claims in these cases. Smith has filed similar derivative claims against a mutual fund trust distributor in at least one other case, *Smith v. Franklin/Templeton Distrib., Inc.*, No. C 09-4775 PJH (W.D. Cal.), in Western District of California.

The Declarations of Distributor's general counsel and others persuasively demonstrate that few if any of the foreseeable relevant witnesses reside in Colorado, and most reside in New York or in the vicinity of New York. The Trusts, like most investment companies, act through their Trustees and agents such as the Distributor in these cases, and have no employees of their own or physical "headquarters" in Colorado or elsewhere). Zack Decl. ¶¶ 10-11. Distributor is a New York corporation, and its

Chairman, Chief Executive Officer, President, and Chief Financial Officer are all located in New York. Zack Supp. Decl. ¶ 7. At all times since 2005, the annual review and approval of the 12b-1 Plan, under which the "asset-based compensation" at issue was paid by the Funds to Distributor and by the Distributor to the broker-dealer firms holding Fund shares, was conducted by the Funds' respective Boards of Trustees in New York. Zack Decl. (Doc. 20-1) ¶ 8. Defendants claim litigating in the SDNY would reduce the disruptions to Distributor's business which would occur if critical personnel had to travel due to litigation. Defs.' Am. Mot. to Transfer Venue (Doc. 20) p. 19 n.8. As previously stated, all of the Fund Trustees save Mr. Wold reside on the East Coast. Zack Decl. ¶ 11. The two broker-dealer firms that received the largest amount of the 12b-1 fees at issue, Merrill Lynch and Citigroup, representatives of which will likely be called as witnesses, are also based in New York. *Id.* at ¶ 15.

Plaintiff relies on documents "retrieved from the internet on June 12, 2010" to assert that the Chief Compliance Officer for both the Trust and Distributor are located in Colorado along with "many" of the other employees who carry out the Trust's 12b-1 Plan. *See* Pollack Decl. (Doc. 26) & attached Exs. 3-6. These documents, which include a Bloomberg news article, an undated monster.com job posting for an "Executive Assistant" (non-management) position at the OppenheimerFund Inc. Centennial campus, and a page from OppenheimerFund Inc.'s website describing the operations, including "dealer-servicing arm of OppenheimerFunds Distributor," which are housed at the Centennial campus. *See id.* Mr. Zack, general counsel for Distributor, concedes

Distributor's Chief Compliance Officer has an office at the Centennial campus, but states he also has an office in New York, where "all [Distributor] employees responsible for the terms of any selling agreements with broker-dealers, or tasked with any policy or oversight responsibilities vis á vis the Fund's Rule 12b-1 Plan or the payment of Rule 12b-1 Fees pursuant thereto, are [also] based." Zack Suppl. Decl. at ¶¶ 8-9. Mr. Zack also states that the majority of documents related to the provision of the 12b-1 Plan fees at issue are located in New York. Zack Decl. (Doc. 20-1) ¶ 16.

Defendants also allege that all of the events giving rise to Plaintiff's claims occurred in the Southern District of New York. Specifically, they assert that: (1) the Trustee meetings occurred in the SDNY, including those discussing the distribution agreement between the Trust and Distributor and the Rule 12b-1 plans for payment of distribution and client services expenses from the Trust's assets, Zack Decl. ¶¶ 7-9, 11; (2) the distribution agreement between the Trust and Distributor was entered into in New York, *id.* at ¶ 12; (3) all decisions regarding Distributor's payment of "asset-based compensation" were made and/or reviewed within the SDNY, *Id.* at ¶ 13; (4) the reports to the Trust's Board regarding payment under the Trust's 12b-1 Plan were made by Distributor and reviewed by Board in the SDNY, *id.* at ¶ 9; (5) the broker-dealer contracts were executed in New York. *Id.* at ¶ 14.

Mr. Zack's first-person statements are more tailored to the subject matter of Mr. Smith's lawsuits than the media statements offered by Plaintiff, and persuade me that New York is the location where more of the relevant witnesses and documents are likely

to be in this case.

As relates to the other factors relevant to the balancing of equities under *Chrysler Credit*, I find there is no preference for applying laws locally because Plaintiff's claims arise under federal and Massachusetts law only, and as between the Southern District of New York and the District of Colorado, docket congestion is no more of an issue in one venue than the other.

Deference to Plaintiff's choice of forum, such as it exists, must be weighed against the convenience of the parties and potential witnesses. Defendants have demonstrated that the majority of the events surrounding the provision and payment of asset-based compensation to broker-dealer firms holding Quest and Minerals Funds occurred in New York and that the participants in and witnesses of these events are located within closer proximity to New York than to Colorado. Plaintiff has established no substantive connection between the Trust's broker-compensation decisions of which he complains and this district. Given the weight of evidence demonstrating a strong connection between the Trust and Trustee actions at issue and the state of New York, transfer to the Southern District of New York is warranted under 28 U.S.C. § 1404(a), without reference to the Quest Amended Declaration of Trust's New York forum selection clause.

Based on the foregoing, Defendants' Amended Motions to Transfer Venue (Doc. 20 in Civil Action No. 10-cv-654-JLK (Quest Action) and Doc. 18 in Civil Action No. 10-cv-655-JLK (Minerals Action) are GRANTED, and the cases TRANSFERRED to the

United States District Court for the Southern District of New York. In so ruling, I express no view on the applicability of the mandatory forum selection clause set forth at § 11.4(d) of the Quest Fund Amended Declaration of Trust. I leave the question of the Declaration's application and effect on Plaintiff's Complaint in Civil Action 10-cv-654 (the Quest Action) to the transferee court, to assess in the first instance.

Dated this 23d day of September, 2010, at Denver, Colorado.

**s/John L. Kane**
SENIOR U.S. DISTRICT JUDGE